Charles Herbert WHITE, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD26314.

Missouri Court of Appeals, Kansas City District.

Dec. 18, 1972.

Motion for Rehearing and/or Transfer Denied Jan. 22, 1973.

Willard B. Bunch, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, J., and HARRY A. HALL, Special Judge.

PRITCHARD, Judge.

Appellant seeks relief from a sentence of 10 years imprisonment entered upon his plea of guilty to the crime of armed robbery. His post-conviction motion was filed under Rule 27.26, and alternatively under Rule 27.25, V.A.M.R., and alleged that (1) the plea was not intelligently made because approximately one hour before the plea appellant was administered a dosage of methadone, a narcotic drug and he was under the influence of that drug; and (2) the plea was involuntary because it was the result of his attorney's promise that he would receive a suspended sentence, probation and subsequent addiction treatment at the Fort Worth, Texas, center under the Narcotic Addict Rehabilitation Act III, Title 18 U.S.C.A. After hearing, the court entered findings of fact and conclusions of law denying appellant relief.

Appellant testified that on the morning of May 18, 1970, prior to the time the guilty plea was entered, he went to the hospital shortly before noon, had a urinalysis taken and then took methadone. He had been taking that drug for about two months. On May 18, the methadone dose was 100 milligrams, and from the K.U. Medical Center he came to court. The drug produced "a false sense of well-being and mental sluggishness." "Q. Did it result in your being incapable of understanding the proceedings? A. I would say that it put me in a position to where I accepted things on their face that maybe I wouldn't have otherwise." Prior to the plea, appellant had a discussion with his attorney who told him "that if we entered a plea of guilty I would receive a suspended sentence and probation under the Narcotic Addicts Rehabilitation Act." Appellant accepted the attorney's statement as a guarantee. Two other co-defendants in the case had received 25 years suspended sentences and probation under the Rehabilitation Act. Charges pending in Clay County, Missouri, on another offense were later dismissed, and appellant was later convicted of a federal offense in Omaha, Nebraska. Appellant's counsel was aware that he was participating in the Methadone Program. "Q. Was there any conversation between yourself and Mr. Pierce immediately prior to the plea regarding your condition? A. Yes. Q. What was that conversation? A. Well, he—(laughing) —he accused me of coming down here, we'll say loaded. Q. Well, what did you understand that to mean? A. Well, that I wasn't stably balanced, mentally stably balanced."

On cross-examination appellant testified that he meant that the methadone caused a "false sense of well-being", "that everything is rosy." One is naturally sluggish mentally under the drug, but he had no hallucinations, and he remembered precisely what happened in the hallway with his attorney prior to the plea. He understood that the court was not bound by anything that counsel said. He acknowledged to the court that at the plea a pre-sentence investigation was ordered at his attorney's request and sentencing was deferred to April 30, 1971. On the day the court accepted his plea, he told the court that he drove the car at the robbery, which occurred on Independence Avenue about February 6, afternoon.

William V. McKnelly, an associate professor of psychiatry at the Kansas Univer-

sity Medical Center, testified that appellant became his patient on March 31, 1970, and upon ascertainment of addiction to opiates, a legal opiate, Methadone Hydrachloride, was substituted beginning with small doses and building up to a dose which allowed appellant to function comfortably. Dr. McKnelly had given like treatment to 350 to 400 patients in the past, and was familiar with it and its results. "Q. Would you state to this Court from your knowledge what type of effect this treatment would have on his mental ability to reason? A. Either none or it would improve it. Q. You were in the courtroom today when Mr. White stated what he felt the effect of this treatment was on him? A. Yes, sir. Q. In your opinion as a Doctor, having treated Mr. White, do you feel that any of these conditions could result from the treatment you were giving him? A. Absolutely not. Q. You are positive of that? A. Yes. * * * Q. I see. Now, is it your testimony that Mr. White could not have been drowsy as a result of taking Methadone on May 18th, 1970? A. No. Charles knows better than that. No, he wasn't drowsy." Appellant probably was relaxed to the point of what might be considered relative normality for most people. There would be no state of euphoria, and a giddy, high sensation does not occur.

Mr. Lewis Pierce represented appellant on the charge which resulted in the guilty plea of May 18, 1970. He did not remember what he and appellant talked about, "but if you use the word did I 'promise' him something. I didn't promise him anything. I do remember talking to him about how we would try, and how I had discussed the N.A.R.A. Program with the Federal people and with the Prosecutor. I know I discussed that with him. * * * THE COURT: Did you ever in your life tell any defendant that this Court had agreed to anything? THE WITNESS: Of course not, Judge." Mr. Pierce did remember that he asked appellant in the hall before the plea what was he on, and appellant told him he had taken methadone, a discussion of which fact is reflected in the record.

Rose Ann McWilliams drove appellant to and from the K.U. Medical Center on May 18, 1970. After appellant took the methadone she observed: "[L]ike, you couldn't hardly never talk to him or get nothing out of him, you know; whenever you would talk to him, his words would be scrambled around, you know. Like, you couldn't make much sense out of him. You know."

As is apparent from the conflicting evidence taken on this hearing the following Findings of Fact of the court are not clearly erroneous, Crosswhite v. State, Mo., 426 S.W.2d 67: "1. At the time of Movant's plea of guilty he was not under the influence of Methadone, a narcotic drug, to the extent that he did not know and fully understand exactly what he was doing. 2. Movant was not told by his lawyer that upon his plea of guilty he would receive a suspended sentence and probation." Upon the plea of guilty, the record shows that appellant was fully advised of his rights by the court, and the record of the plea of guilty shows that he made intelligent responses to the questions put to him by the court. He told the court that he was not promised anything nor induced to enter the plea of guilty. Such record fully supports the conclusion that appellant's plea was not wrongfully accepted by the court. Johnson v. State, Mo., 463 S.W.2d 873, 876 [3].

The judgment is affirmed.

All concur.