**Donald Ray MALSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD 27428.**

Missouri Court of Appeals,
Kansas City District.

Aug. 4, 1975.

Motion for Rehearing and/or Transfer
Denied Sept. 2, 1975.

Application to Transfer Denied
Oct. 21, 1975.

Modified on Court's Own Motion
Oct. 24, 1975.

Robert G. Duncan, William E. Shull, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

Movant appeals from the denial of his motion, under Rule 27.26, to vacate a judgment and sentence. He was sentenced to life imprisonment for murder in the second degree (reduced from the charge of first degree murder) upon his plea of guilty. He urges upon this appeal that the trial court's findings of fact and conclusions of law are clearly erroneous because 1) his plea of guilty was not knowingly entered and he did not comprehend or understand the nature of the proceedings against him due to the administration and injection of various drugs by employees of the state before the entry of such guilty plea; and 2) he was denied the effective assistance of counsel, in that his counsel failed to properly preserve and urge his defense of mental incompetence and further, coerced him into making a plea of guilty based upon threats, duress and false information.

■ The burden of proving grounds for the relief sought, by the preponderance of the evidence, rests upon the appellant, and the findings of the trial court are presumptively correct and must be sustained on this appeal unless they are clearly erroneous. Rule 27.26(j); *Crosswhite v. State,* 426 S.W.2d 67, 70[1] (Mo.1968); *Beach v. State,* 488 S.W.2d 652, 656[10] (Mo.1972).

■ A review of the record of the guilty plea, entered on August 3, 1971, discloses that the trial court and then counsel for the appellant used meticulous care in explaining to the appellant the nature of the proceedings and to ascertain that the plea was entered knowingly and voluntarily within the guidelines of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and the many Missouri decisions on this subject. Indeed, this 37-page transcript discloses that the appellant made alert, intelligent and coherent responses and had complete recall of the details and occurrences surrounding the homicide.

He further testified that his attorney had fully advised him with reference to the crime of second degree murder; he understood the range of penalty therefor was from ten years to life imprisonment, which the trial judge again stated at the hearing; that no promises had been made to him as to the sentence that would be imposed or that he would be granted probation, and that those determinations were solely up to the judge; that he had the right to stand trial before a jury, in which event he would be entitled to the protections of reasonable doubt, right of confrontation, the right against self-incrimination, and the right to appeal, if convicted; and, that he had fully discussed the possible results of his plea with his attorney and members of his family.

At this plea hearing, he was intensively questioned about the course of medication being administered to him at the jail, and the following appears:

"THE COURT: And at the present time you are not under the influence of any medication or dope or alcohol that would prevent you from understanding the consequences of what you are doing here today?

A.  That's right, Your Honor.

\*      \*      \*      \*      \*      \*

THE COURT: Are you pleading guilty to this crime for any reason other than the fact that you are guilty?

A.  No, Your Honor."

He further stated that the medication did not interfere with his awareness or understanding of the proceedings.

At the allocution and sentencing proceedings on October 18, 1971, (consisting of 47 pages of transcript) those same matters were once again covered. Upon this occasion, he stated he was taking Thorazine and Benadryl under the doctor's prescriptions at the time of his guilty plea because he "couldn't sleep" and for "nervousness".

Dr. Lindgren testified at the Rule 27.26 hearing, held December 21, 1972, that the drug "Thorazine" calms a person and makes him more rational, but does not change the psychotic thinking process; that "Benadryl" is a drug to relieve muscle spasm; that "Prolixin", a drug also administered to appellant, was similar to "Thorazine"; and, that no bad or "pyramiding" effect would result from the administration of these drugs in proper doses over the same period of time. At this hearing, the attorney representing the appellant at the plea and sentencing stated that he knew that his client was under medication but that appellant told him he had not taken the "pills" and that he seemed alert and responsive, his mind did not wander, and he had good recall of details.

The appellant testified that Prolixin had been forcibly administered to him by Dr. Lindgren and his jailers on two occasions, one occasion being in July, prior to his guilty plea on August 3, 1971. He stated that the drug "immobilized" him for 3 or 4 days and thereafter made him feel "sluggish" and slow-moving and "uncaring". He testified that as a result of this injection of Prolixin that he had "no mental feeling" and "things just didn't seem like they were worth listening to", at the time of his guilty plea. He also testified that he was given an injection of Prolixin the second week in September, prior to his sentencing, but had taken no other drugs between August 3, 1971 (the day of his guilty plea) and October 18, 1971 (the date of his sentencing). On the latter date, he substantially reaffirmed his testimony of August 3, that his guilty plea was intelligently and knowingly entered.

In the light of this record, there was substantial competent evidence that at the time of appellant's guilty plea, he was not under the influence of any medication or drug which would corrupt his intelligent and knowing entry of that plea. *Cavallaro v. State,* 465 S.W.2d 635, 636[1] (Mo.1971); *White v. State,* 490 S.W.2d 672, 674 (Mo. App.1972). The trial court's finding was not clearly erroneous. The appellant's first point was properly ruled.

During the pendency of the first degree murder charge, then counsel for appellant filed a motion for a mental examination under Chapter 552, RSMo 1969. This examination was had at the Western Missouri Mental Health Center, apparently in June, 1971, and resulted in the conclusion that the appellant was competent to stand trial but was inconclusive as to his mental state at the time of the crime because the appellant admitted he had ingested drugs and alcohol at the time he bound and then shot his victim three times.

A significant conclusion reached by the examiners, which was a part of the record before the court below, stated:

"The defendant's sensorium is extremely clear. His attention span is long, his ability to concentrate is excellent, his recent memory and remote memory is beyond questioning and his intellectual capacity appears to be at least within range of normal. His judgment is excellent, but he appears to have little insight into some of his deeper underlying emotional problems."

Counsel for appellant (at that time) testified that he advised his client of his right to an examination by and the opinion of a private doctor, and that if the defense of

insanity was successfully urged and a jury so found, he would be sent to a mental institution until it was determined that he had regained his sanity; that his mental state could be reviewed every 180 days, but that he could remain in such institution the rest of his life; and, that if the jury rejected such defense, he could be sentenced to death or life imprisonment on the first degree murder charge. Counsel testified that he did not make any assurances as to the sentence which appellant would receive if he pleaded guilty to a second degree murder charge.

As to the Chapter 552 defense, counsel stated that he left that decision entirely up to appellant and was advised by his client that he did not want to go to a mental hospital and was instructed not to press that defense. This appears to have been a rational and deliberate choice by the appellant, and as such, an abandonment of such possible defense. *Keller v. State,* 523 S.W.2d 127, 130[3] (Mo.App.1975).

There can be no doubt that the appellant had a long history of emotional and nervous problems. He testified that he had been confined at the Nevada State Hospital in 1963 under a voluntary commitment for a nervous breakdown, and at the Fulton State Hospital, under the same commitment, in 1965–1967 for a recurrence of the breakdown. He had previously been charged with offenses of criminal assault and first degree burglary, but such charges had not been pressed. He had served some time in a federal penitentiary for improper use of the mails to convey "threats". The instant homicide has homosexual overtones.

Appellant further testified that his counsel advised him that if the insanity defense was successful, he would go to a mental hospital for life without any chance of "parole", and that is why he signed the waiver and withdrawal of that defense. He further stated that his counsel discouraged having a private mental examination and that counsel advised him he would be sentenced to 15 years on a guilty plea to second degree murder.

However, at the plea hearing of August 3, 1971, appellant testified that he had full knowledge of the report from the Western Missouri Mental Health Center and was thoroughly satisfied with it; that he had fully discussed it with his lawyer; that he did not desire further examination, and did not wish to pursue the matter further; that he had executed the written waiver of the defense of "insanity"; that he was able to fully cooperate with his attorney and to understand the proceedings; and, that no threats or coercion of any kind had occurred to cause him to abandon the incompetency defense. The following appears in the transcript of the plea hearing:

"THE COURT: Do you have any criticism to make of the way your attorney has handled your case?

A. No, Your Honor, I do not.

THE COURT: Do you think he has done all that reasonably can be done on your behalf under the circumstances?

A. Yes, Your Honor, I do."

At the sentence hearing, appellant was asked by his attorney:

"[Q] Is there anything you wanted done that the lawyer did not do for you?

[A] No, sir.

[Q] You are thoroughly satisfied then with the services of the attorney, is that right?

[A] Yes, sir."

■ It is obvious that the appellant was not denied effective assistance of counsel in that his counsel " * * * failed to properly protect and preserve the defendant's defense as to mental incompetence, * * * " as charged in appellant's second point relied on in this appeal. His counsel did assert this defense under Chapter 552, RSMo 1969; he did arrange for and obtain a mental examination; he advised appellant of his right to an additional examination by a private doctor of his own choosing; and, according to counsel's testimony, he fully advised the appellant of the possible results of further urging of this defense. There is no dispute between them that the defense was withdrawn by written waiver, signed

by the appellant and at appellant's direction.

■ However, at the Rule 27.26 hearing and now, appellant asserts that this direction was given by him and his plea of guilty entered to the reduced charge because his counsel "coerced" him by "threats, duress and false information". The only conceivable record basis for such charge is appellant's testimony that he was advised by his counsel that if he prevailed in this defense, he would be institutionalized for the rest of his life "with no chance for parole" and that if he pleaded guilty, he would receive a 15-year sentence. Such testimony was given by the appellant for the first time at the Rule 27.26 hearing and was diametrically contrary to his previous sworn testimony that he was not subjected to any threats, promises or coercion, and the sworn testimony of his counsel that he had made no such statements as to the results of a finding of insanity or the sentence that would be imposed upon a guilty plea. Under the "totality of events and circumstances" preceding the entry of the guilty plea and the subsequent sentence, the "afterthought" testimony of appellant in this regard is not believable. *Rayford v. State,* 504 S.W.2d 285, 290[6] (Mo.App.1973).

In ruling this point against the appellant, the trial court was supported by competent, believable evidence, and its denial of relief thereon was not clearly erroneous.

The judgment is affirmed.

All concur.