STATE OF MISSOURI, Respondent, v. CLARENCE RASH, Appellant, No. 41327—221 S. W. (2d) 124.

Division One, June 13, 1949.

*Waldo Edwards* and *Jayne & Jayne* for appellant.

*J. E. Taylor*, Attorney General, and *David Donnelly*, Assistant Attorney General, for respondent.

DOUGLAS, J.—Defendant appeals from a conviction of manslaughter upon which he was given a two-year sentence.

One of his principal contentions on appeal is the state failed to prove a crime because the state's evidence itself established that the

killing was justifiable in lawful self defense. Ordinarily self defense is in the nature of an affirmative defense, and a question for the jury. But whether the state's evidence, which is neither disputed nor contradicted, established self defense so as to make a killing justifiable homicide instead of murder or manslaughter is a question of law for the court. We find the state itself proved the killing was justifiable in self defense, and hold that the court should have directed a verdict of acquittal.

Defendant was charged with killing his brother-in-law, Bryan Mullinax, by stabbing him with a knife. There were no ▇▇▇ witnesses to the stabbing except defendant's wife. As the means of proving its case the state called as its own witness the defendant's son who related in evidence his father's confession to him about killing the deceased. His testimony for the state was not contradicted or disputed in any detail either by the state's other evidence or by the defendant's evidence.

These facts were adduced by the son's testimony. Defendant operated a saw mill. He and his wife were living temporarily at Downing while defendant was cutting lumber there. Bryan Mullinax, his brother-in-law, lived with them. He had worked for defendant off and on for 15 or 20 years. He never had kept a steady job. Defendant supported him, giving him money and clothing. At Downing the defendant, his wife, and deceased occupied two adjoining rooms in a residence. Defendant and his wife used one for their bedroom, deceased slept in the other. The rooms were connected by a doorway between.

Deceased was younger and stouter than defendant. He was 54 years old, about 5 feet, 10 inches tall, and weighed from 175 to 190 pounds. Defendant was 59 years old, about 5 feet, 6 inches tall, and weighed from 145 to 150 pounds.

On December 11, 1947 defendant and deceased had been out together. Deceased had been drinking. When intoxicated he would become quarrelsome. Defendant had seen deceased uptown earlier in the evening and tried to get him to go home but deceased refused, so defendant went on home. It was after midnight when they later returned home together.

Deceased went directly into the house. Defendant went in about ten minutes later. Defendant entered the house through the deceased's room where deceased was sitting on his bed. He went through the connecting door into his room where his wife was in bed, turned on the light and started to remove his clothes. Deceased said to him: "I don't like the way things are going on. I am going to leave." Defendant told him to go on back to bed. But deceased started toward defendant's bedroom saying, "Before I go I am going to beat your God-damed head in." When he reached the middle of the bedroom defendant's wife jumped out of bed. Deceased kept

218

advancing so defendant's wife stepped between the two men. Deceased then struck out over the wife's shoulder hitting defendant, and all three fell to the floor. Defendant was on the bottom, on his back. Deceased kneeled on defendant, and had his hands on defendant's throat, choking him. Defendant was frightened. He thought he would be choked to death. He believed it was his life or deceased's. While deceased was kneeling on him, grasping his throat, he eventually removed his pocket knife from his pocket. He opened it and stabbed deceased a number of times on the left side of his neck and body until he freed himself from deceased's grip. When the son saw his father between two and three A. M. he testified he noticed his father's throat was swollen, his right ear was injured, he had a skinned place on his forehead and a swelling below his left eye.

Defendant's wife called the landlady who was sleeping in the adjoining room. She came in the bedroom and saw defendant's wife caring for deceased who was lying on the floor. Defendant was standing up. Defendant's wife asked her to telephone for the doctor and for an ambulance which she did. The doctor arrived and found deceased still lying on the floor in the bedroom still alive. Deceased was placed in an ambulance which started out for the hospital at Kirksville. When the ambulance reached Green Top deceased died from the wounds.

We find the state's evidence established all the elements of lawful self defense. It showed defendant did nothing to provoke the attack deceased made upon him. Deceased was the aggressor, defendant had retreated until he about had his back to the wall. Defendant had actual and honest belief that he was in imminent danger of death, and in the necessity even to kill in order to save his own life. He certainly was justified in such belief with deceased, a younger and stouter man, kneeling upon him pinning him to the floor trying to choke the life out of him. When defendant felt the pressure on his throat relax so he could free himself from deceased's grip he stopped stabbing him.

"In resisting an assault a person is not required to determine with absolute certainty or nicely to gauge the amount of force necessary for that purpose, but the law does exact of him that he shall not use any more force than shall reasonably appear to him to be necessary for such purpose." State v. Singleton (Mo.) 77 S. W. (2d) 80.

At the trial defendant requested a directed verdict at the close of the state's case. It was denied. He did not stand on the ruling but put on evidence in his behalf. However, he renewed his request for a directed verdict at the close of all the evidence. In that situation in order to determine whether the state made a case we must now search all the evidence, defendant's as well as the state's, for

matters favorable to the state's case. In doing so, we find defendant's evidence did not add anything to strengthen the state's case. It only served to confirm the facts proved by the state which had established self defense. It did not contradict, vary or dispute the state's evidence in any detail. It was merely repetitious and cumulative.

In testing the sufficiency of the evidence it is true that we must look at all the facts in the light most favorable to the state. That means we must resolve all conflicting evidence in favor of the state, but in this case there are no conflicting facts and no conflicting inferences. We find the whole evidence leads only to one conclusion. It tells only one story, and in only one way.

By another rule which is followed in determining whether a submissible case has been made, we are required to consider as true all the state's evidence which is favorable to its case. Doing so in this case, we are compelled to find the state's evidence is not sufficient to prove both of the two necessary elements to establish the corpus delicti, namely the death and the criminal agency which caused it. After the state proved the death and proved it resulted from stab wounds inflicted with a knife, its evidence then went on to prove defendant inflicted the stab wounds in lawful self defense. For what constitutes lawful self-defense see Sec. 4379 R. S. 1939, Mo. RSA. Therefore, the homicide was proved to be justifiable. Thus the state failed to prove the death was a result of any criminal agency. The statute, Section 4382, defining the crime of manslaughter expressly excludes justifiable homicide.

Furthermore, the rule is settled that in the proof of self defense a defendant is entitled to the benefit of any matters of justification which appear in the evidence introduced by the state. State v. Davis, 342 Mo. 594, 116 S. W. (2d) 110. Self defense may be fully sustained by the evidence for the state, as well as by all the evidence in the case. State v. Manns, 48 W. Va. 480, 37 S. E. 613; State v. Johnson, 49 W. Va. 684, 39 S. E. 665.

In Privitt v. Commonwealth, 271 Ky. 665, 113 S. W. (2d) 49, it is said: ". . . yet, if the evidence introduced in behalf of the commonwealth fails to incriminate the accused, or is wholly insufficient to show guilt of the offense charged, it is not only the right, but the duty of the trial judge to instruct the jury to return a verdict of not guilty."

"If, therefore, the proof clearly and uncontradictedly shows that, although accused perpetrated the act, but that he was forced to do so in the necessary self-defense of himself, his property, or of another, and not with the requisite unlawful intent and purpose, there is then a failure to prove a punishable crime. In that case the court is not only authorized under the practice, but it is its duty as well, to direct the acquittal of the defendant on trial—when the plea of self-

defense is thoroughly and clearly established—or to set aside the verdict of conviction when it is flagrantly against the evidence, as defined by the opinions of this court.''

Under the circumstances of this case we hold the state proved the killing of deceased was justifiable in self defense. Thus it failed to prove the crime charged, and the trial court should have sustained defendant's request for a directed verdict of acquittal.

We said in State v. Warner, 74 Mo. 83 that we will not reverse a judgment in a criminal case on the ground the verdict is against the evidence unless there is a total absence of evidence, or it failed so completely to support the verdict as to give rise to the necessary inference that the jury must have acted from prejudice or partiality. And in State v. Daubert, 42 Mo. 242 we said that if the evidence does not tend to prove the commission of a crime, or if. it is plainly insufficient to justify a verdict, it is the duty of the court to so declare. We reaffirm those rulings. They are in accord with the general rule that a directed verdict of acquittal is proper when the evidence is legally insufficient to sustain a verdict. 23 CJS, Criminal Law, § 1145.

Accordingly, the judgment of guilt is *reversed*, and the defendant ordered *discharged*. All concur.