**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert Jewel YOUNG, Defendant-Appellant.**

**No. 35253.**

Missouri Court of Appeals,

St. Louis District,
Division One.
April 9, 1974.

Appellants Motion for Rehearing or to Grant him a Hearing En Banc or for Transfer to Supreme Court Denied June 3, 1974.

Application to Transfer Denied July 22, 1974.

degree for which he received a sentence of fourteen (14) years.

Much of the evidence as to the facts surrounding this homicide is undisputed. On May 20, 1972 the deceased, Jimmy Lewis, and the defendant met at a carnival. An altercation ensued (defendant claims the deceased tried to rob him and struck him with a pistol) which ended when the defendant asked a policeman to escort the defendant to his car. The following Monday, May 22, defendant was in the Municipal Courts Building in Saint Louis City and saw Jimmy Lewis there. The defendant obtained a purse containing a gun from a companion (his sister-in-law) and left the building. Another companion, Michael Kirk, accompanied the defendant. While walking toward his car, the defendant saw Jimmy Lewis. The defendant took the gun from the purse and fired at Lewis. He began chasing Lewis back toward the Municipal Courts Building when Lewis stumbled and fell. The defendant ran closer to the fallen man and fired two more shots as Lewis was trying to stand up. At the time these two final shots were fired, the defendant was about five to ten feet from Lewis and had been standing there for several seconds. Lewis collapsed after those shots were fired. Lewis was wounded four times, one of which was the cause of his death. The defendant proceeded into the Municipal Courts Building where, when confronted by police officers, he surrendered without resistance.

The defendant testified that Lewis was a member of the Fats Woods gang; had the nickname of "Killer"; had made threats against the defendant the night at the carnival; and, had again threatened defendant that Monday morning in the building. The defendant stated that he had received threatening phone calls the weekend of May 20 and 21 but did not know who the caller was. He proceeded to testify that he shot Lewis because he feared Lewis was after him and was going to kill him and this fear was reinforced by the threats, the reputation of Lewis and the

John C. Danforth, Atty. Gen., G. Michael O'Neal, Robert L. Presson, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty. David P. McDonald, Ronald B. Safren, Asst. Circuit Attys., St. Louis, for respondent.

Daniel P. Reardon, Jr., St. Louis, for defendant-appellant.

DOWD, Chief Judge.

A homicide case. Defendant appeals from a conviction of murder in the second

fact that Lewis was wearing a long shirt which could conceal a pistol. (No weapon was found on or near Lewis' body).

During direct examination, the defendant stated that Lewis had followed him from the building. A videotape statement made by the defendant shortly after the shooting was played for the jury which indicated that Lewis had left the building before the defendant. The defendant attempted to explain this inconsistency by stating he was nervous at the time he made the videotaped statement.

The court instructed the jury on first and second degree murder rejecting the defendant's request for instructions on manslaughter and self-defense. The jury found the defendant guilty of second degree murder.

The defendant's sole assertion on appeal is that the court erred in refusing his tendered instruction on self-defense. For reasons that will become apparent later, we feel it unnecessary to quote that instruction. It suffices to point out that the tendered instruction contained references to self-defense, communicated threats, and the decedent's "rash, violent and turbulent disposition or character."

The Missouri Supreme Court, in discussing the quantum of proof necessary to support an instruction on self-defense, has held:

"* * * This quantum of proof has been variously defined as 'substantial evidence,' State v. Rose, Mo., 346 S.W.2d 54; State v. Baker, Mo., 277 S.W.2d 627; State v. Singleton, Mo., 77 S.W.2d 80; 'evidence putting it in issue,' State v. Ford, 344 Mo. 1219, 130 S.W.2d 635; 'any theory of innocence * * * however improbable that theory may seem, so long as the most favorable construction of the evidence supports it,' State v. Kinard, Mo., 245 S.W.2d 890; 'supported by evidence,' State v. Robinson, supra [Mo., 328 S.W.2d 667]; 'any theory of the case which his evidence tended to es-

tablish,' State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914; 'established defense,' State v. Sumpter, Mo., 184 S.W.2d 1005; and 'evidence to support the theory,' State v. Shiles, Mo., 188 S.W.2d 7." State v. McQueen, 431 S.W.2d 445, 448 (Mo.1968).

■■■ The right to kill in self-defense rests in real or apparently real necessity, and the doer of the homicidal act must have done everything in his power, consistent with his own safety, to avert the necessity. State v. Sherrill, 496 S.W.2d 321, 325 (Mo.App.1973). When self-defense is in issue, it is important to determine who was the aggressor and the reasonableness of the actor's fear. Consequently, an instruction on threats or violent character should accompany the self-defense instruction in the appropriate case. State v. Bounds, 305 S.W.2d 487, 490 (Mo.1957). We do not believe, however, that there was sufficient evidence in this case to require the giving of an instruction on self-defense. State v. Baker, 277 S.W.2d 627, 629 (Mo.1955).

■■■ Taking the evidence in the light most favorable to the defendant, we have the defendant's testimony that he had known the deceased for two or three weeks; the deceased had hit the defendant and threatened him two days prior to the shooting; the defendant knew that the deceased's reputation was that of a killer; the defendant saw the deceased on the morning of the incident at which time the deceased threatened "to get" him that day; and the defendant left the building and was walking to his car. The defendant's testimony continued as follows:

"Q [by defense counsel] Where did you go when you got outside?

"A I was walking across the lawn. I was walking across the lawn and right at the corner of the City Jail Jimmy comes out the door and he started walking towards me and he got all the way, you know, where that crosswalk is.

\*   \*   \*   \*   \*   \*

"Q What did you do?

"A *I just turned around and started shooting.*

"Q Now, at that time did you fear that he was after you?

"A Yes, sir.

"Q And did his threats that he had made, was that on your mind?

"A Yes, sir.

"Q Did his reputation, was that on your mind?

"A Yes, sir.

"Q What did you think was going to happen to you?

"A Going to kill me.

"Q Did you see a weapon on him?

"A No, sir, but he had a long shirt. I don't know what he had under it." (Emphasis ours).

 This evidence, stated simply and concisely, shows the defendant was twice threatened by Lewis, and when Lewis walked toward him on a public walkway, the defendant "turned around and started shooting" without either ascertaining if any immediate danger existed or attempting to avoid any possible confrontation by continuing to his auto. We fail to see any real or apparently real necessity. The most that can be said of the defendant's favorable evidence is that he was afraid of Jimmy Lewis. But something more than fear, no matter how great that fear, must be present to justify as self-defense an act as extreme as taking another's life with a deadly weapon. Some affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present. We are not prepared to say that threats by a person with a reputation for violence, fear of that person by the defendant due to those threats, simultaneous presence of the defendant and that person in a public area, and the fact that that person's clothing could possibly conceal a weapon constitute a real or apparently real necessity to justify the defendant "turning and starting to shoot." The defendant did not do everything within his power to avert the use of deadly force, and there was not sufficient evidence in this case upon which to base a self-defense instruction.

The trial court correctly refused to submit a self-defense instruction. The judgment is affirmed.

SIMEONE and WEIER, JJ., concur.