STATE of Missouri, Plaintiff-Respondent,

v.

Raymond McGuffery JACKSON, Defendant-Appellant.

No. 35721.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 15, 1975.

Charles D. Kitchin, Public Defender, James E. Wynne, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Donald R. Bird, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, J. Brendan Ryan, Circ. Atty., Thomas C. Muldoon, Asst. Circ. Atty., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant Raymond McGuffery Jackson was convicted of manslaughter (§ 559.070, RSMo 1969, V.AM.S.). Since the jury was unable to assess punishment the court sentenced defendant to eight years imprisonment (§ 559.140, RSMo 1969, V.A.M.S.). Defendant, in this appeal, urges two assignments of error by the trial court. We find both contentions lacking in merit and affirm the trial court's judgment.

The evidence at trial revealed the following. On October 21, 1972, at 5:00 p. m., defendant was visiting Tommie Peyton at Peyton's apartment at 5107 Maple in St. Louis. Peyton's nephew, George Thomas, also arrived and soon after left the third floor apartment to go to the bathroom on the first floor. Upon returning, Thomas told Peyton and the defendant that he "got into a scuffle downstairs with some dude that was trying to get him to leave the house and trying to put him out". All three men then proceeded downstairs to the kitchen where they found Allen Stewart, the deceased, with whom Thomas had previously "scuffled.". An argument ensued, followed quickly by a "fist fight" between the deceased, Thomas, and Peyton. After a couple of minutes the defendant

attempted to pull his two companions off the deceased whereupon he was hit with some object by the deceased. The defendant was knocked backwards, but did not fall, and as the deceased advanced on him the defendant pulled a knife from his pocket and stabbed him. The deceased's wife discovered him at the doorway of their home at 5010 Minerva at about 8:00 p. m. that night, about one block away from the scene of the stabbing. The deceased was taken promptly to Homer G. Phillips Hospital where he remained until his death caused by two stab wounds on November 3, 1972.

■ Defendant asserts the trial court erred in denying his motion for judgment of acquittal at the close of the entire case, contending the evidence showed the defendant acted in self-defense. What constitutes self-defense, of course, is not a question of fact for the jury, but a question of law. State v. Rash, 359 Mo. 215, 221 S.W.2d 124[1] (1949); 41 C.J.S. Homicide § 344, p. 108. But where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, it is generally a question of fact for the jury to determine whether the accused acted in self-defense in a particular case. State v. Hammonds, 459 S.W.2d 365, 368[4] (Mo.1970); State v. Hicks, 438 S.W.2d 215, 219[4] (Mo. 1969); State v. Vincent, 321 S.W.2d 439, 442[6], 444[11] (Mo.1959). Only when all the evidence is undisputed and clear should a court dispose of a murder or manslaughter charge by acquittal without tendering the issue of self-defense to the jury. State v. Rash, *supra*, 359 Mo. 215, 221 S.W.2d 124, 125[2] (1949). Rarely, then, is self-defense declared by law so as to bar the submission of the homicide offense altogether.

■ Generally, to support a plea of self-defense there must be 1) an absence of aggression or provocation on the part of the slayer [State v. Aubuchon, 394 S.W.2d 327, 334[15] (Mo.1965)]; 2) there must be the presence of real or apparently real necessity to kill in order to save oneself [State v. Young, 510 S.W.2d 732, 734[1] (Mo.App.1974)]; 3) reasonable cause must exist for belief of such necessity [§ 559.-040(2), RSMo 1969, V.A.M.S.; State v. Hicks, *supra,* 438 S.W.2d 215, 218[2] (Mo.1969)]; and 4) the slayer must have done everything in his power consistent with his own safety to avoid the danger and avert the necessity, and he must retreat, if retreat be practicable [State v. Sherrill, 496 S.W.2d 321, 325[14] (Mo.App. 1973)].

Applying these elements, it is readily apparent this situation is not, as defendant contends, the rare and unusual case where the proof clearly and uncontradictedly demonstrates the defendant was forced to kill in order to defend himself as in State v. Rash, *supra.* Defendant asserts he was a peacemaker and in no manner the aggressor or provoker of the difficulty, but a contrary inference is certainly supported by the evidence. Defendant had knowledge of the previous scuffle between the deceased and George Thomas, yet he voluntarily accompanied Thomas and his uncle downstairs to confront the deceased. Had he remained in the third floor apartment, he would not have been in danger of attack; thus the situation is one in which the defendant placed himself in the midst of a fist fight on the first floor, a choice of his own making.

■ Nor does the evidence demonstrate a clear showing of the necessity of defendant's actions once he became physically involved in the affray. Something more than fear is required to justify such extreme conduct as the taking of another's life with a deadly weapon. Some affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present. State v. Brown, 502 S.W.2d 295, 299[3] (Mo.1973); State v. Young, *supra,* 510 S.W.2d 732, 735[4] (Mo.App.1974). Defendant testi-

fied he was "afraid" of the deceased, but fear of simple assault and battery is not sufficient to justify homicide. State v. Jackson, 511 S.W.2d 771, 777 (Mo.1974).

■ Defendant saw no weapon on the deceased and none was found in deceased's clothing, although defendant did allege he was struck with an "object" which was never identified. In fact, the only relevant circumstance to cause fear was the deceased's large size. But that alone cannot justify a killing. State v. Parker, 403 S. W.2d 623, 627[4] (Mo.1966). Furthermore, as the state points out, both of defendant's friends were in the immediate area and able to assist him, and apparently they did not feel their smaller size precluded them from physically overpowering the deceased since they voluntarily argued and fought with him.

■ It cannot be said, therefore, as a matter of law, that what occurred in this case was justifiable homicide and nothing else. But rather the issue of self-defense was a question properly submitted to the jury with appropriate instructions. State v. Hammonds, *supra* at 368[4]; State v. Hicks, *supra* at 219[4]; State v. Vincent, *supra* at 442[6]. In fact, there have been many cases where the inferences to be drawn from the evidence were much less likely to differ and where the evidence of self-defense was much more persuasive, yet the self-defense issue was still not declared by the court, but was sent to the jury for determination. *See e. g.* State v. Ford, 491 S.W.2d 540 (Mo.1973); State v. Hicks, *supra*; State v. Austin, 367 S.W.2d 485 (Mo.1963). The trial court was not in error when it overruled the defendant's motion for acquittal.

The defendant's second contention raised on appeal is that the trial court erred in receiving the jury verdict because it was not agreed to freely and voluntarily. Admittedly the jury did have some difficulty arriving upon their verdict, "guilty of Manslaughter * * * unable to assess the punishment", but we do not find it to have been coerced or in any other manner influenced by the trial judge's conduct.

The circumstances leading to the verdict are as follows. The jury retired to deliberate at 12:42 p. m. on August 21, 1973. At 5:10 p. m. the jury returned to the courtroom and the foreman reported a decision had been reached as to guilt but that they were unable to assess punishment. The judge refused to hear the details of the jury's difficulties, but gave them the "Hammer" instruction, reminding the jury of the desirability of reaching a verdict, and sent them back to deliberate. At 5:55 p. m. the jury again returned to the courtroom, still without a verdict, informing the court that all twelve jurors agreed as to the issues of guilt and the particular crime, but could not assess punishment. When the judge inquired as to why Instruction No. 6[1] had not been followed in regard to finding the defendant guilty but unable to assess punishment, the foreman explained one person was troubled by a "small technicality" and would not agree. The judge read this instruction to the jury again, and then directed them to once again return to the jury room and to execute "the form of verdict that suits the crime that you agree upon and which states that you are unable to agree upon the punishment." Upon their return at 6:05 p. m. with the signed verdict, the jury was polled. As the tenth

1. Instruction No. 6: "You are further instructed that under the laws of this State the Jury, after hearing the evidence and the instructions of the Court, should retire and decide upon the guilt or innocence of the defendant in this case; and if the defendant is found guilty by you, to assess his punishment in accordance with the other instructions of the Court. If, however, after due delibera-

tion, you have been able to and do agree upon the guilt of the defendant but you are unable to agree upon the punishment to be assessed in this case for such guilt, you may return into court a verdict which states that you have agreed upon the guilt of the defendant but are unable to agree upon the punishment for such guilt, and, in that event, the Court may assess the punishment."

juror was polled, the following colloquy occurred:

"THE CLERK: * * * Herbert Wilson, Junior, is the verdict I have just read your verdict?

"HERBERT WILSON, JR.: No.

"THE COURT: Stop right there. You members of the jury know that this verdict must be unanimous before it is received. You are Mr. Herbert Wilson, Junior?

"HERBERT WILSON, JR.: Yes.

"THE COURT: Mr. Wilson, in the proceedings in this case you heard the foreman agree that you all agreed upon the guilt of the defendant; do you agree upon that?

"HERBERT WILSON, JR.: Yes, sir.

"THE COURT: And do you agree, Mr. Wilson, in your verdict that the defendant is guilty of manslaughter; do you agree to that?

"HERBERT WILSON, JR.: Yes, sir.

"THE COURT: Then what is it that you object to, Mr. Wilson? Why do you say it is not your verdict?

"HERBERT WILSON, JR.: Because I agree on the term and fine which we have one—you said you could do that but none of the rest of them—it was 6 to 6 at one time that they—

"THE COURT: Wait just a moment. At this stage, I have no right to inquire into the jury problems. In other words, as a juror you agree that the defendant is guilty of manslaughter?

"HERBERT WILSON, JR.: Yes.

"THE COURT: But you can't agree with the other 11 jurors insofar as the punishment is concerned; is that right?

"HERBERT WILSON, JR.: And they can't agree either. They can't agree on the punishment.

"THE COURT: Isn't that what they say here: 'WE further find that we are unable to assess the punishment.'

"HERBERT WILSON, JR.: Yes, sir.

"THE COURT: So isn't it correct then that you can't agree upon the punishment and the other 11 jurors can't agree upon the punishment?

"HERBERT WILSON, JR.: I can agree upon it.

"THE COURT: Well, the others can't agree with you on the punishment?

"HERBERT WILSON, JR.: Right.

"THE COURT: But, Mr. Wilson, there is no question is there that once you agree upon the guilt of the charge of manslaughter; isn't that right?

"HERBERT WILSON, JR.: Yes.

"THE COURT: All right. You may be seated. You may finish the polling of the jury."

█ This exchange between judge and juror does not show judicial coercion but only the judge's proper attempt to clarify Mr. Wilson's confusion. *See* Williams v. United States, 136 U.S.App.D.C 158, 419 F.2d 740, 744–746[5, 6, 7] (banc 1969). Questioning a juror in open court as to his decision need not be "inherently" coercive as defendant maintains; a distinction must be drawn between questioning a juror to alleviate some element of confusion and an attempt to compel a juror to change his or her vote or to coerce a unanimous verdict. Amos v. United States, 496 F.2d 1269, 1273[3] (8th Cir. 1974); United States v. Edwards, 469 F.2d 1362, 1367[7] (5th Cir. 1972); Williams v. United States, *supra* at 746[6, 7].

█ Nor can we find a violation of Rule 27.01(e),[2] V.A.M.R., which requires

---

2. Rule 27.01(e) provides: "When a verdict is returned and before it is recorded, the jury shall be polled at the request of any party or upon the court's own motion. If at the

the jury to be discharged or retired for further deliberation when the polling shows a lack of unanimous consent. Although we have found no Missouri case dealing precisely with the issue before us, Rule 31(d) of the Federal Rules of Criminal Procedure[3] is substantively the same and has been interpreted as granting the trial judge discretion in assessing the impact of a dissenting vote. Amos v. United States, *supra* at 1272[1]. In evaluating the polling procedure of the trial court, we must give deference to the views of the trial judge who was present at the scene on whether the juror's ultimate acquiescence in the verdict was free from pressure from the court. Amos v. United States, *supra* at 1273[4].

The practice in this state for a trial judge to inquire of the jury how they stand numerically, without indicating what party or result they favor, to ascertain whether there is a reasonable probability of agreement on a verdict has been approved. In such instance, the inquiry on appeal is whether from what was said and done at the time there was any indication of coercion by the court exerted on members of the jury to influence their verdict. State v. Morris, 476 S.W.2d 485, 489[4] (Mo.1971); State v. Baker, 293 S.W.2d 900, 905[4] (Mo.1956).

Here, this was not an instance of court interrogation directed to force an open court decision where a juror expressed reservation, or an attempt by the court to achieve unanimity, which have correctly been disapproved. *See e. g.* United States v. Sexton, 456 F.2d 961 (5th Cir. 1972); Jones v. United States, 273 A. 2d 842 (D.C.App.1971); Matthews v. United States, 252 A.2d 505 (D.C.App.

1969); Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F. 2d 224 (1942). Instead the evidence indicates the judge knew, prior to the polling, the jurors were unanimous as to the guilt issue and that a "technicality" as to the verdict, stating the guilt but unable to reach a punishment, remained in one juror's mind. Where uncertainty of a juror results from confusion rather than dissent, the trial judge may question him to obtain clarity. Simons v. Federal Bar Building Corporation, 275 A.2d 545, 554[11] (D.C. App.1971); Williams v. United States, *supra* at 746[5, 6, 7]. Only when it is clear the verdict of one juror differs from the others, has the conduct of the trial judge been held improper. Simons v. Federal Bar Building Corporation, *supra* at 554. The circumstances were not such in this case. Mr. Wilson was in total agreement on defendant's guilt but was confused as to the requisite amount of disagreement needed among the jurors to return a verdict stating they could not agree upon punishment. Defendant, therefore, was not denied his right to a unanimous verdict derived from private deliberation.

No purpose would have been served if the judge had retired the jury to deliberate once more, as defendant argues would have been the proper conduct under Rule 27.-01(e). The jury had been sent back twice before with the same dilemma and could not resolve it. The judge did not invade the province of the jury by clearing up the confusion of one juror who assented to the jury's verdict of guilt but disagreed as to punishment.

Judgment affirmed.

DOWD and RENDLEN, JJ., concur.

conclusion of the poll all of the jurors do not concur, the jury may be directed to retire for further deliberations or may be discharged by the court."

3. Rule 31(d) of Federal Rules of Criminal Procedure provides: "When a verdict is re-

turned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."