**STATE of Missouri, Respondent,**

v.

**Victor R. MEANEY, Appellant.**

**No. KCD 28919.**

Missouri Court of Appeals,
Kansas City District.

Feb. 27, 1978.

Bob J. Hiler, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Stanley Robinson, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Victor R. Meaney was convicted of murder in the second degree and the jury assessed punishment at twenty years imprisonment. Section 559.020, RSMo 1969.

On this appeal Meaney asserts the court erred in refusing to accept a plea of guilty to a reduced charge of manslaughter and the failure of the State to prove a submissible case of second degree murder. Affirmed.

Meaney was charged with second degree murder but following a plea negotiation with the State, a reduced charge of manslaughter was filed. Meaney, through his attorney, announced he was pleading guilty to the charge of manslaughter. The court conducted an examination to determine the voluntary nature of the plea. All went well until the court inquired about the details of the shooting. At this time Meaney stated he had only shot in self-defense and at another time stated he did not intend for the gun to be fired. The court stated it could not accept the plea of guilty. The State requested leave to reinstate the charge of second degree murder to which Meaney's counsel stated he had no objection.

Meaney now contends the court erred in refusing to accept his plea because the maximum punishment for manslaughter is ten years and he received a sentence of twenty years.

Rule 25.04 provides a court may refuse to accept a plea of guilty. Early in the court's examination of Meaney to determine the voluntary nature of his plea, the court advised Meaney it was not required to accept his plea. When it became evident Meaney was actually contending he had shot the deceased either in self-defense or accidentally, the court refused to accept the plea. There is no absolute or constitutional right to have a guilty plea accepted. *Stewart v. State,* 499 S.W.2d 830, 832[1–3] (Mo. App.1973); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Meaney, however, relies upon *North Carolina v. Alford,* 400 U.S. 25, 89 S.Ct. 1306, 22 L.Ed.2d 558 (1970). However, *Alford* did not hold the accused had a constitutional right to have a guilty plea accepted but in fact stated to the contrary in footnote 11. Meaney, in this case, made no attempt to enter a plea such as *Alford* entered.

In view of Meaney's statements during the hearing that he acted only in self-defense or his acts resulted only from accident, the court was fully justified in refusing to accept his plea of guilty.

The jury could reasonably have found that Allen Overcast had previously shared an apartment with Meaney. At that time Overcast was the owner of a blacklight, a device to focus ultraviolet light. When Overcast ceased sharing living quarters with Meaney, the blacklight was left behind. Thereafter Overcast became obsessed with a desire to regain the light.

On the night of the shooting, Overcast placed several calls to Meaney demanding return of his light. When Meaney failed to

meet Overcast to deliver the light as he had promised, Overcast, in company with his brother and sister-in-law, drove by Meaney's house. Overcast was determined to regain his light and told his brother to stop. Overcast approached the darkened apartment of Meaney and knocked on the door several times. Meaney finally came to the door completely wrapped in a blanket so that his hands were concealed. Overcast demanded return of his light and when Meaney stated he would not return it, Overcast said he was going in after it. As he started to enter the apartment, Meaney dropped down on one knee and fired a single shot which struck Overcast in the temple. Overcast died shortly thereafter.

The above evidence came from the State's witnesses. Meaney testified in his own defense. According to his version, when he went to the door in response to the knocking, Overcast and his brother immediately came inside and started pushing Meaney. Meaney stated Overcast had his hands around his throat when Meaney fired.

After the shooting Meaney jumped out of a window and ran to a house next door. He was later found there by a policeman when he fell through a false ceiling in the policeman's presence. The gun was found also. Meaney stated Overcast had been a non-violent, decent person and he considered him to be a friend. He stated he did not expect trouble after Overcast made his last telephone call prior to coming to his apartment.

Meaney admitted he had answered the door with a gun in his hand and even though the gun could be fired by pulling the trigger, he had cocked it prior to going to the door. He stated Overcast told him before he opened the door that if he had to he would beat Meaney. Meaney never thought Overcast was armed.

Meaney's testimony was corroborated in most respects by his girl friend and by his roommate.

Meaney contends the evidence, as outlined above, was insufficient to support a submission of second degree murder to the jury. The court submitted second degree murder and manslaughter. The court also gave instructions on self-defense and excusable homicide. Meaney did not offer any instructions.

■ On this appeal this court must consider the evidence and all favorable inferences to be reasonably drawn therefrom in the light most favorable to the State and all contrary evidence and inferences must be disregarded. *State v. Franco,* 544 S.W.2d 533, 534[1–4] (Mo. banc 1976). "[T]he wilful, premeditated killing of a human being with malice aforethought constitutes murder in the second degree." *State v. Franco* at 535.

■ Viewing the evidence in the light most favorable to the State, together with all favorable inferences to be reasonably drawn therefrom, reveals evidence sufficient to submit to the jury a question of whether or not Meaney had committed second degree murder. Premeditation simply requires thought before the act for any length of time however short. *State v. Smart,* 485 S.W.2d 90, 93[2] (Mo.1972). The evidence that Meaney knelt on one knee prior to firing the shot allowed the jury to reasonably infer that he had done so to better his position prior to firing the shot. The evidence the pistol was cocked prior to Meaney going to the door would allow the jury to find premeditation.

■ Wilful simply means intentional. *State v. Adams,* 532 S.W.2d 524, 527[2–4] (Mo.App.1976). The evidence likewise would permit the jury to find and infer that Meaney intentionally fired the shot which killed Overcast.

Malice has been said to be the intentional doing of a wrongful act without just cause or excuse. *State v. Allen,* 530 S.W.2d 415, 420[5–7] (Mo.App.1975). The evidence likewise would permit the jury to find Meaney intentionally fired the shot.

■ The intent to kill may be inferred from the circumstances surrounding the crime. *State v. Allen, supra* at 420[9–11]. Here there were substantial facts and circumstances from which a jury could find all the elements of second degree murder.

Meaney does not so much question the absence of evidence to support a finding of second degree murder as he contends the evidence showed as a matter of law that he acted in self-defense. Of course, in making this argument Meaney relies entirely on his own testimony as corroborated by his other witnesses.

■ The applicable rule is stated in *State v. Jackson,* 522 S.W.2d 317, 319[1, 2] (Mo. App.1975):

> What constitutes self-defense, of course, is not a question of fact for the jury, but a question of law. *State v. Rash,* 359 Mo. 215, 221 S.W.2d 124[1] (1949); 41 C.J.S. Homicide § 344, p. 108. But where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, it is generally a question of fact for the jury to determine whether the accused acted in self-defense in a particular case. *State v. Hammonds,* 459 S.W.2d 365, 368[4] (Mo. 1970); *State v. Hicks,* 438 S.W.2d 215, 219[4] (Mo.1969); *State v. Vincent,* 321 S.W.2d 439, 442[6], 444[11] (Mo.1959). Only when all the evidence is undisputed and clear should a court dispose of a murder or manslaughter charge by acquittal without tendering the issue of self-defense to the jury. *State v. Rash, supra,* 359 Mo. 215, 221 S.W.2d 124, 125[2] (1949). Rarely, then, is self-defense declared by law so as to bar the submission of the homicide offense altogether.

■ It is apparent the evidence in this case is not free of dispute. For that reason the question of whether or not Meaney acted in self-defense was properly submitted to the jury.

■ Meaney raises other points in his brief but these are presented without any citation or authority. These points are deemed to have been waived or abandoned. *State v. Halliburton,* 531 S.W.2d 554, 556[4–6] (Mo.App.1975).

The judgment is affirmed.

All concur.