STATE of Missouri, Respondent,

v.

Raymond Lee TAYLOR, Appellant.

No. WD 30808.

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1980.

Kenneth D. Kyser, Moberly, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

PRITCHARD, Judge.

Charged as a second offender, appellant was convicted of the commission of the crime of murder in the second degree by the verdict of a jury. The court sentenced him to 40 years imprisonment in the Division of Corrections.

Appellant's first point is that the trial court erred in refusing to sustain his motions for judgment of acquittal because the state failed to prove his guilt beyond a reasonable doubt.

Appellant and the victim, Fred Lee Shaw, were inmates of the Missouri Training Center for Men in Moberly, Missouri, in June, 1978. At about 10:10 p. m., on June 25, 1978, Shaw was stabbed several times by appellant when Shaw was walking along a bottom walk of a dormitory enroute to his cell from the shower. He was then clothed only in a towel, and according to guard Morris Guerin, who witnessed the incident, appellant had a shiny object in his hand and was striking Shaw in the chest area. Guerin testified also that appellant hit Shaw in the stomach area twice as he was going down. Shaw was going down on the floor and as Guerin got there, he yelled to appellant to move away and he did. Sergeant Dodd yelled "drop the knife" and appellant did so. The knife was admitted into evidence. Guerin turned his attention to Shaw, who was lying on the floor, and noticed that he had a cut above his heart, the upper part of his chest, and he had blood on his left arm and a lot of blood around his stomach. Shaw was taken to the Training Center Hospital where he was treated by Dr. W. H. McCormick, who saw that he was unconscious and had received stab wounds in the left chest, abdomen, and on the left hand. Shaw was taken to the University of Missouri Medical Center in Columbia where he died at about 12:15 p. m., the next day. There was medical testimony that the cause of death was cardiac arrest due to or as a consequence of multiple stab wounds in the right arterial laceration.

There was other eyewitness testimony that appellant attacked Shaw who did not try to fight back, who was unarmed, and who was merely trying to protect himself from appellant's blows.

Appellant claimed the justification of self-defense for the slaying. An instruction was given on that subject. Appellant testified that he feared sexual attack or other physical harm from Shaw or other black inmates. There was one prior confrontation between appellant and Shaw two days before the stabbing, in which, according to appellant, Shaw had threatened to blind him with a razor blade if he would not grant him sexual favors. On the night of the stabbing Shaw came out of the shower, dried off in front of it, and on seeing appellant in the hallway said, "Hey, big guy, come here and give me some", meaning sexual favors. Appellant then decided that upon Shaw's saying that and because of other threats he had made, there was no alternative but to attack. Shaw walked to

a point almost directly across from appellant who walked across the wing and stabbed him.

■ It is doubtful that appellant was even entitled to the given instruction on self-defense as the four elements essential thereto are lacking in the evidence under *State v. Jackson*, 522 S.W.2d 317, 319[3] (Mo.App. 1975): (1) An absence of aggression or provocation on the part of the slayer; (2) the presence of real or apparently real necessity to kill in order to save oneself; (3) reasonable cause must exist for belief in such necessity; and (4) the slayer must have done everything in his power consistent with his own safety to avoid the danger and avert the necessity, and he must retreat, if retreat be practicable. [Case citations omitted.] In the *Jackson* case, supra, page 319[1, 2], it is said further, "Only when all the evidence is undisputed and clear should a court dispose of a murder or manslaughter charge by acquittal without tendering the issue of self-defense to the jury. [Citing case.] Rarely, then, is self-defense declared by law so as to bar the submission of the homicide offense altogether." Apparently, in citing only § 559.-040, RSMo 1969, appellant is contending that his claim of self-defense was established as a matter of law and thus the state made no submissible case, but under the evidence recited above, and the *Jackson* case, supra, that simply is not true. The other elements of the offense under § 559.-020, RSMo 1969 (now § 565.004, RSMo 1978), are clearly established. See *State v. Cook*, 560 S.W.2d 299, 305[10] (Mo.App. 1977). Point I is overruled.

■ During the voir dire examination, the state's attorney asked if there was anyone who had any kind of family or business problem which would cause undue hardship by reason of serving on the case "for however long it takes." One of the panel members, Lorraine McCully, responded that she did not realize the type of case, her supervisor was leaving town, and there was a company policy that when he was gone, she was to be there. Appellant challenged her for cause and it was overruled, and by Point

II, he says this was error because he was entitled to a full panel before he made his peremptory challenges, and Mrs. McCully was not a qualified juror because of pressure caused by her employment responsibilities. The record does not show that appellant was forced to use one of his peremptory strikes to remove Mrs. McCully, but whether or not he was, the right to challenge on appeal the trial court's action was not waived. See *State v. Morrison*, 557 S.W.2d 445, 447 (Mo. banc 1977). There is no showing of prejudice resulting from the trial court's ruling. *State v. Johnson*, 534 S.W.2d 844, 846[3] (Mo.App. 1976), and quoted case. There was no showing that whatever hardship or potential pressure Mrs. McCully might be under, it would affect her ability to render a fair and impartial verdict. The matter rests in the trial court's exercise of discretion, no abuse thereof being apparent at all, and it will not be disturbed. *State v. Johnson*, supra. Point II is overruled.

■■ The third point is that the trial court erred in granting the state a continuance to secure proper documents of appellant's prior convictions. Apparently, the first proffered documents were refused because of errors and discrepancies which were contained in them. Later in trial, proper documentation was secured and was admitted into evidence without objection. This "continuance" was within the court's discretion, and the documents were received before the case was submitted to the jury. § 556.280, RSMo 1969, does not prescribe a procedure different from that which was used. The second portion of the point relates to the failure of the trial court to make findings as to the applicability of the second offender act, but that matter was not presented in the motion for new trial and thus may not be reviewed. Nevertheless, that failure is not reversible error. See *State v. Blackwell*, 459 S.W.2d 268, 272[3] (Mo. banc 1970); *State v. Franklin*, 547 S.W.2d 849, 852[3] (Mo.App. 1977). Point III is overruled.

■ Appellant's fourth point is that the trial court erred in refusing permission

for his counsel to argue the punishment which could have been imposed, the state having waived the death penalty as before announced by the court. He argues that the state, by waiving the death penalty, wanted to remove that matter from the jury's mind if they found appellant guilty of capital murder, and he should, in fairness, have been entitled to argue what the penalties were reduced to—life imprisonment, without eligibility for parole for 50 years. It was not error for the court to inform the jury that the state had waived the death penalty (done without objection). Note MAI–CR 15.28, which requires the jury to be so informed where it will fix the penalty. But here, because of the applicability of the second offender act, the jury was not concerned with the punishment to be imposed. See *State v. Niehoff*, 395 S.W.2d 174, 183[15] (Mo. 1965). Point IV is overruled.

Appellant lastly contends that the sentence of 40 years was excessive so as to constitute cruel and unusual punishment. The contention is answered by the fact that a sentence within the statutory range has never been held in this state to be excessive, although there may be some departure from that standard as announced in *State v. Mitchell*, 563 S.W.2d 18, 26[16] (Mo.App. 1978), quoting from *State v. Johnson*, 549 S.W.2d 348, 352 (Mo. banc 1977), " 'our courts have repeatedly held that a punishment which is within the statutory limits for the offense, . . . is not cruel and unusual because of its duration *unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances.*' " Under the statute, the punishment here was imprisonment for not less than 10 years. Even applying the italicized *Mitchell* standard, the sentence was not disproportionate to this premeditated homicide, and the same is not shocking to the moral sense of reasonable men. Point V is overruled.

The judgment is affirmed.

All concur.