STATE of Missouri, Respondent,

v.

James Wilson CHAMBERS, Appellant.

No. 64709.

Supreme Court of Missouri,
En Banc.

June 19, 1984.
Rehearing Denied July 17, 1984.

J. Paul Allred, Jr., Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant James Wilson Chambers appeals from a conviction of capital murder, § 565.001, RSMo 1978, for which he was sentenced to death. Because of the sentence imposed, this Court has exclusive appellate jurisdiction. Mo.Const. art. V, § 3 (amended effective December 2, 1982).

The Country Club Lounge is a roadside tavern. Early in the evening on May 29, 1982, Steve Oestricker got into an argument with another patron, Jackie Turner. At the owner's request, Jackie Turner and his family left the tavern. Appellant Chambers arrived around 10:00 p.m. and asked for the Turners. Chambers then left and returned with Jackie Turner. Upon entering the tavern, Chambers asked Oestricker to buy him a drink. Oestricker refused. Chambers then said, "I thought you were a friend of mine," and Oestricker responded "you're no friend of mine." The owner then told the two to take their problems outside. It is from this point that there is conflicting evidence.

*According to the State's evidence:* while walking out the door Chambers reached under his shirt and pulled a pistol from his pants, cocked it and concealed it from Oestricker. Oestricker, unarmed, followed Chambers outside. Once both were outside, Chambers struck Oestricker in the face with the pistol, knocking him to the ground. As Oestricker attempted to get up, Chambers shot him in the chest. Chambers then kicked Oestricker and beat him several times in the face with the pistol.

*According to appellant's evidence:* he was completely outside the door when he drew the pistol. Oestricker initially walked up to him and struck him in the face, knocking him to the ground. He got up and shot Oestricker who staggered back to a wall. Chambers then walked over and struck Oestricker several times in the face with the pistol, causing Oestricker to fall to the ground.

Appellant Chambers tendered a self-defense instruction at trial. It is well established that:

[W]here the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, it is generally a question of fact for the jury to determine whether the accused acted in self-defense * * *.

*State v. Jackson,* 522 S.W.2d 317, 319 (Mo. App.1975); *see also State v. Wilson,* 645 S.W.2d 372 (Mo.1983); *State v. Rash,* 359 Mo. 215, 221 S.W.2d 124 (1949); *State v. Miller,* 653 S.W.2d 222 (Mo.App.1983); *State v. Eskina,* 606 S.W.2d 270 (Mo.App. 1980); *State v. Simms,* 602 S.W.2d 760 (Mo.App.1980); *State v. Thornton,* 532 S.W.2d 37 (Mo.App.1975). The trial court refused to instruct on self-defense on the

grounds that there was not a "scintilla of evidence" supporting such a submission.

■ The right of self-defense is a person's privilege to defend himself against personal attack. *State v. Ivicsics,* 604 S.W.2d 773 (Mo.App.1980). Deadly force may be used in self-defense only when there is (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *Wilson, Rash, supra; State v. Hicks,* 438 S.W.2d 215 (Mo.1969). In examining the record for evidence of self-defense, we must consider the evidence in light most favorable to appellant Chambers. *State v. Thomas,* 625 S.W.2d 115 (Mo.1981).

■ Although there was a verbal exchange inside the tavern, the initial act of physical aggression occurred when Oestricker struck Chambers in the face. Consequently, a jury could reasonably conclude that Oestricker, not Chambers, was the initial aggressor.

■ Chambers is small in stature— 5'6" tall and weighing 150 pounds. Oestricker, on the other hand, was 6'4" and 250 pounds. Something more than fear of size, however, is required to justify the use of deadly force in self-defense. Some affirmative action, gesture or communication by the person feared indicating the immediacy of the danger, the ability to avoid it and the necessity of using deadly force must also be present. *Jackson, supra; State v. Isom,* 660 S.W.2d 739 (Mo.App.1983). In *Hicks, supra,* the victim was not only much larger than the defendant but was also the initial aggressor. This Court found that these factors created an appearance of necessity for defendant to use deadly force to protect himself against severe bodily harm. Certainly, appellant could have drawn the same conclusion here.

■ The reasonableness of a defender's belief in the necessity of using deadly force is generally a question for the jury. *State v. Swindell,* 357 Mo. 1090, 212 S.W.2d 415 (1948); *State v. McGowan,* 621 S.W.2d 557 (Mo.App.1981); *Eskina* and *Thornton, supra.* In *State v. Gordon,* 191 Mo. 114, 89 S.W. 1025 (1905), the victim, a much larger man than the defendant, assaulted the defendant with his fist. This Court found that "considering the great disparity in weight and size and the character of the assault, it should have been submitted to the jury whether defendant had not reasonable cause to apprehend that deceased was about to kill him or do him some great bodily harm." *Id.,* 191 Mo. at 130, 89 S.W. at 1030. The same holds true in the case at hand; the issue should have been submitted to the jury.

■ The final element of self-defense is that appellant Chambers did all within his power consistent with his personal safety to avoid the danger and the taking of human life. In *State v. Bartlett,* 170 Mo. 658, 71 S.W. 148 (1902), this Court noted that a "man, because he is the physical inferior of another, * * * is [not] * * * bound to submit to a public [assault]. * * [I]f nature has not provided the means for such resistance, art may; in short, a weapon may be used * * *." *Id.,* 170 Mo. at 670–71, 71 S.W. at 152. "In resisting an assault a person is not required to determine with absolute certainty * * * the amount of force necessary for that purpose * * *. [T]he law does exact of him [however] that he shall not use any more force than shall reasonably appear to him in the circumstances to be necessary * * *." *Rash,* 359 Mo. at 218, 221 S.W.2d 126. Here the circumstances were such that considering physical attributes alone, appellant Chambers was no match for the victim. Further, the victim was the initial aggressor. Although appellant could easily have shot the victim before the victim got close enough to throw the first punch, appellant did not choose this alternative. While appellant might have pursued a course of

conduct other than shooting the victim, the reasonableness of such other conduct would be within the sound discretion of the jury. *Miller, supra.*

█ While the evidence of self-defense is not so unequivocal as to mandate a directed verdict of acquittal, the evidence is sufficient to justify submission of self-defense to the jury. *State v. Sherrill,* 496 S.W.2d 321 (Mo.App.1973); *State v. Peoples,* 621 S.W.2d 324 (Mo.App.1981). The failure to do so constitutes reversible error.

Appellant Chambers also contends that the trial court erred in admitting the testimony of two State witnesses concerning alleged threats he made towards them on the evening of the shooting. The State strains to justify the admission of this evidence on the grounds that it was "relevant to the identity of the murderer in that appellant was identified as being in the car that drove up to the bar with the murderer of the victim and which left with the murderer after the crime." We need not rule the contention on this appeal.

The judgment is reversed and the cause is remanded for new trial.

All Concur.