McMILLAN, Retired Appellate Judge.
 

 The appellant, Shana R. Cromwell, was indicted on a charge of soliciting the murder of her ex-husband, a violation of § 13A-4-1, Ala.Code 1975. Cromwell filed a motion to dismiss or, alternatively, for a judgment of acquittal in which she contended that she was not guilty of the charged offense as a matter of law because, she said, she had renounced her solicitation of the murder, as provided in § 13A-4-l(b). After a hearing,
 
 [1]
 
 the parties filed briefs in support of their respective positions. The trial court then issued a written order, granting Cromwell’s motion to dismiss. In the order of dismissal, the trial court stated, in pertinent part: “Thus, the court concludes that during the telephone conversation of June 25, 2007, [Cromwell] satisfied the renunciation requirement set forth under § 13A-4-1(b)(1).” The court further stated:
 

 “It is clear from the recorded conversation, taken as a whole, that [Cromwell] had, at that point, decided not to continue the solicitation to fruition and it is equally clear that she had abandoned her present intent to follow through with the planned murder of her ex-husband. The same was undisputedly understood by Cpl. [Scott] Donovan
 
 [2]
 
 at the conclusion of his conversation with [Cromwell].”
 

 In addition, the trial court stated that it was interpreting the “warning” provision of § 13A-4-l(b)(2) as “applicable only in the event that the requirement under § 13A-4-l(b)(l) was, for some reason, ineffective in terminating the solicitation.”
 

 The record contains the following undisputed evidence: After engaging in an unpleasant divorce and a custody dispute with her ex-husband, Michael Flynn, Cromwell contacted her brother about hiring a hit man to kill Flynn. Scott Donovan, an agent with the Alabama Bureau of Investigation, posed as the hit man and met with Cromwell on June 15, 2007. Cromwell concedes that her actions at that time amounted to criminal solicitation. On June 25, 2007, Donovan telephoned Cromwell to discuss when the hit should take place. After discussing the advantages and drawbacks of killing Flynn that weekend while he had company at his home, Cromwell asked Donovan if he would hate her if she backed out of their agreement. He said that she needed to let him know, one way or the other, and she said: “Let’s just hold off for a while.” Donovan told
 
 *33
 
 her that she would have to hire someone else, and Cromwell said that she was concerned because an officer had seen her meeting with Donovan. She said that she was never nervous about “the first one,” which involved her children’s biological father, and that her gut was telling her “no[,] not right now.” Donovan asked if he should expect another call eventually, and she said: “No, ... if I go to get it done next time[,] ... [I’]ll ... try and ... find ... my uncle Lee.... That’s who helped me out last time.” Donovan told her that it would be better if she had someone else who could do the job later because he did not feel comfortable any longer, and the conversation ended shortly thereafter. In the order of dismissal, the trial court quoted from the transcript of a preliminary hearing in district court, in which Cromwell’s counsel asked Donovan whether he understood Cromwell to be saying in the telephone conversation “do not kill him.” Donovan responded: “Oh, yes, sir.”
 

 Section § 13A-4-l(a), Ala.Code 1975, provides, in pertinent part, that “[a] person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a crime, he solicits, requests, commands or importunes such other person to engage in such conduct.” Subsection (b) of the statute provides, in pertinent part; that “[a] person is not liable under this section if, under circumstances manifesting a
 
 voluntary and complete
 
 renunciation of his criminal intent, he (1) notified the person solicited of his renunciation and (2) gave timely and adequate warning to the law enforcement authorities or otherwise made a substantial effort to prevent the commission of the criminal conduct solicited.” (Emphasis added.) The Commentary to § 13A-4-1 provides, in pertinent part:
 

 “It should be emphasized that subsection (b) applies only to voluntary abandonment. A renunciation is not voluntary and complete if motivated by a belief that circumstances exist which increase the probability of detection or apprehension of the defendant or another participant in the criminal enterprise, or which render more difficult the accomplishment of the criminal purpose, or a decision to postpone the crime until another time or to transfer the criminal effort to another victim or another but similar objective.”
 

 In her brief to the trial court, Cromwell contended that the facts relative to the renunciation were undisputed because the parties had accepted the transcript of the June 25, 2007, conversation as accurate. She argued that the issue whether a renunciation occurred during this conversation was therefore a question of law for the court. In its brief, the State noted that Cromwell had relied heavily on the portion of the Commentary that states that any additional substantial efforts to prevent the commission of the crime are only needed if the solicitor’s renunciation fails to dissuade the person solicited.
 
 [3]
 
 The State argued that the purported renunciation was not voluntary and complete because there was “absolutely no renunciation of [Cromwell’s] intent on seeing Mike Flynn dead.” The State further argued that “[Hooking at whether or not the person solicited was dissuaded to commit the crime only occurs after [Cromwell] can
 
 *34
 
 prove her intent not to have the crime solicited occur.” The State contended that the question of whether Cromwell had renounced the solicitation was a question that should be considered by the jury.
 

 The Commentary to § 13A-4-1 states that subsection (b) provides for a renunciation “defense” that is similar to the defenses provided in § 13A-4-2 for an attempt and in § 13A-2-24 for complicity. In
 
 Lockett v. State,
 
 505 So.2d 1281 (Ala.Crim.App.1986), this court addressed the defense of self-defense. Lockett argued that the trial court should have granted his motion for a judgment of acquittal because the State’s own evidence established that the charged killing was justifiably self-defense. In holding that the killing was not justifiable as a matter of law, we stated:
 

 “In the absence of a thorough delineation by an Alabama appellate court of the respective roles of the trial court and the jury in treatment of a self-defense claim, we find the following helpful:
 

 “ ‘The determination ... requires the application of the well-established rule, as stated in
 
 State v. Rash,
 
 [359 Mo. 215,] 221 S.W.2d [124,] at [124] [(1949)]:
 

 “ ... Ordinarily self defense is in the nature of an affirmative defense, and a question for the jury.
 
 But whether the state’s evidence, which is neither disputed nor contradicted, established self defense
 
 so as to make a killing justifiable homicide instead of murder or manslaughter is
 
 a question of law for the court.”
 
 (Emphasis added.)’
 

 “‘A further refinement of this rule is found in
 
 State v. Jackson,
 
 522 S.W.2d 317 (Mo.App.1975) and cases cited therein, where the court said, [at 319]:
 

 “ ... But where the evidence is conflicting
 
 or of such character that different inferences might reasonably be drawn therefrom,
 
 it is generally a question of fact for the jury to determine whether the accused acted in self-defense in a particular case. (Cases cited) ... Only when all the evidence is undisputed
 
 and dear
 
 should a court dispose of a murder or manslaughter charge by acquittal without tendering the issue of self-defense to the jury, (cases cited). Rarely, then, is self-defense declared by law so as to bar the submission of the homicide offense altogether.” (Emphasis added.)’
 

 “State v. Thornton,
 
 532 S.W.2d 37, 42-43 (Mo.App.1975) (footnote omitted).
 
 Cf. Raines v. State,
 
 455 So.2d 967, 974 (Ala.Crim.App.1984).”
 

 505 So.2d at 1284-85. Because different inferences might reasonably be drawn from the evidence of renunciation in the present case, the issue should be submitted to the jury, rather than determined by the court. The trial court’s order dismissing the case is reversed and the cause remanded.
 

 The foregoing opinion was prepared by Retired Appellate Judge H.W. “Bucky” McMillan, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
 

 REVERSED AND REMANDED.
 

 WISE, P.J., and WELCH, WTNDOM, and KELLUM, JJ., concur.
 

 [1]
 

 . A transcript of the hearing was not included in the record on appeal.
 

 [2]
 

 2. Cpl. Donovan posed as a hit man and was contacted by Cromwell.
 

 [3]
 

 . The Commentary states, in pertinent part:
 

 "Moreover, under subsection (b), the solicitor must notify the person solicited of his renunciation which could be an important step in preventing the commission of the offense initially advocated. Should notification of the solicitor's renunciation fail to dissuade the person solicited, the solicitor must undertake ■ an additional substantial effort to prevent the crime.”