Kenneth Gregory RAYFORD, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26290.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1973.

Sloan R. Wilson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

PRITCHARD, *Judge.*

Upon his plea of guilty entered on January 17, 1970, appellant was sentenced to thirty years imprisonment in the Department of Corrections for the offense of murder in the second degree. He now seeks post conviction relief under Rule 27.-26, V.A.M.R. to withdraw his plea of guilty under the provisions of Rule 27.25: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

Appellant's supplemental oral motion (Point VI here) made during the hearing under Rule 27.26 was to the effect that the statement of appellant made to the court at the time the plea of guilty was entered revealed that there were facts, "which if true, would leave the Court or possibly a jury, depending on who it was tried before, to find that the defendant had in fact a justifiable defense of self defense. And under those circumstances stated to the Court by the defendant, the defendant renews his vocalized plea to stand trial for first degree murder." The transcript of the record made at the time of the plea does indeed indicate that self defense *could* have been *interposed:* "THE COURT: Now, the Information charges that you took the life of one William Robert Medina on July 25, 1969. You are telling the Court that you did kill William Robert Medina? THE DEFENDANT: Yes, sir. THE COURT: You did that with a revolver? THE DEFENDANT: Yes, sir. THE COURT: Do you have any questions, Mr. Peak, that you would like to add? MR. PEAK: Why did you kill Mr. Medina? THE DEFENDANT: Presently I was staying at Thirty-First and Benton, and William Medina came over and had jumped on my girl friend, and like that, so I goes over to his house to ask him about that, and when I get over there he sees me at the window, and he is laying *down on the couch when I walk in,* and when I get ready to ask him a question he pulls a pistol, and he fires at me, and I fired back at him, and he got hit, and I ran, and so that is what happened. THE COURT: Very well. The court finds that this defendant knowingly and voluntarily and intelligently enters his plea of guilty,

and it is therefore received." Upon request of appellant's counsel a presentence investigation was ordered, and the state asked leave to dismiss another case (C-38832) "in lieu of the plea in C–38962" (the latter case is the one in which the charge of murder in the first degree was reduced to murder in the second degree).

Other matters which were developed at the time appellant's plea was taken are these: His counsel told the court that appellant indicated he wanted to enter a plea of guilty to the reduced charge of second degree murder. Appellant stated that he understood that then he was charged with second degree murder, and that he had indicated to counsel that he wanted to enter a plea of guilty to that charge. Appellant was 19 years old; he had advanced in education to the 10th grade; he could read, write and understand the English language; he realized that the court would assess his punishment which would range from 10 years to life in prison; he recognized that Mr. Sundeen was his lawyer and that he was entitled to a speedy trial with the aid of counsel if he so desired, and that Mr. Sundeen was willing to represent him in a jury trial if he so desired. Appellant stated he wanted to enter a plea of guilty to the charge and that counsel had advised him of the penalty range of 10 years to life in prison, and he understood the court would assess the penalty. "MR. SUNDEEN: Have you been offered any reward to plead guilty? THE DEFENDANT: No. MR. SUNDEEN: And are you pleading guilty because you are guilty? THE DEFENDANT: Yes." Appellant was in good health, with no mental illnesses or defects to his knowledge, and the fact that he had been shot and had received medication for the wounds and injuries did not affect his ability to understand what was going on at the time of the plea. Appellant stated he was satisfied with Mr. Sundeen's representation as counsel in this matter, and that he understood that he was in court entering a plea of guilty. At the time appellant's plea

was taken, the state made no statement as to what its evidence would be, but at the time of sentencing counsel stated, "The State's evidence would have been that Mr. Medina was asleep at the time that they broke in and in fact he never woke up before he was shot."

On April 24, 1970, appellant appeared with counsel for sentencing. At that time the court had the results of the presentence investigation which were read into the record by the court. On the charge upon which appellant had pleaded, the report recited, " 'On 7–25–69 at approximately 10:30 p. m. Subject accompanied by others burst into a residence at 2118 Monroe, Kansas City, Missouri and began shooting at the victim William Robert Medina and an Everet Hart. Medina who was asleep on the sofa in the house was hit three times with two of the shots being above mid-chest and one above his right eye. An associate of Medina's Everet Hart was shot in the hip while attempting to escape.' " " 'Subject's verson. The Subject indicated that he agreed with the official information. He stated that the situation arose when a girl-friend of his borrowed some money from the victim. When she failed to repay same the victim beat her and had indicated that he was going to get Subject. The Subject stated he had no doubt in his mind that Medina was going to shoot him and he decided to get him first. * * *.' " Appellant's background and social history was recited, including three misdemeanor convictions, and a commitment to the Missouri Training School for Boys on July 17, 1966, from which he was released because of "over-crowdedness at the school." Many other facts showing delinquent, violent and aggressive behavior were noted in the report leading up to the instant charge of July 28, 1969, for which appellant was not arrested until August 30, 1969, significantly on a charge of assault with intent to kill with malice [quite apparently Case C–38832, which was dismissed at the time the plea of guilty was taken in this case, noted above]. In the report it is recited that the August

30th incident involved a shoot-out with the police, in which appellant was shot and taken to General Hospital, and when later there for treatment he escaped. When asked by the court if he would like to say anything for himself, appellant stated, "Yes, sir. I realize that I have committed a very serious crime for taking this man's life, and if he was here today I would like to say this to his face. * * *."

On the hearing of this Rule 27.26 motion appellant testified: "Mr. Sundeen came up to see me and he explained to me, you know, I had quite a few cases and things. So, therefore, things looked pretty bad, so far as that is concerned. He explained on all my cases, I could get a lot of time and things of that nature. It was at this time that he explained to me that he had been down to talk to the prosecutor and things, and him and the prosecutor had decided that—that he would drop the rest of my charges and break my murder first degree down to murder second in the event that I would plead guilty. And he said that I would get the minimum sentence, which was ten years, and he explained, you know, that—he explained that, you know, if I didn't do it like that, I could get a lot of time off my other cases. * * *." Other cases pending were assault with intent to kill, escape, and a robbery case. At one point appellant testified there were five cases in all, but the record is not clear as to whether there was another assault case not mentioned by him. Appellant's counsel told him he "would get a dime" (meaning in jail house terminology ten years), but he never did say that the judge had promised that sentence. It was only the prosecutor and counsel who talked about that. "Q. Did you discuss any possible defense, such as self defense, justifiable homicide, or those things? A. I mentioned that to him—what happened." Appellant also told Mr. Sundeen that he had a defense of alibi, and, according to appellant, Mr. Sundeen talked to several witnesses. As to the defense of self defense, Mr. Sundeen told appellant he would check on it and come back and let him know, but "he just came back and told me about the pleading thing."

Appellant's mother testified that Mr. Sundeen told her that his sentence would be from 10 to 15 years, and that he could get life imprisonment on the first degree murder charge.

The transcript of the proceedings of the preliminary hearing was received in evidence at this 27.26 hearing. Appellant was then present in person and by his attorney, Mr. Sundeen. It was stipulated that the victim, Medina, did meet his death on July 25, 1969, by gunshot wound. Everet Hart testified that he was at 2118 Monroe, Kansas City, Missouri, on that date with William Medina. Hart was asleep but awakened when somebody said, "This is it," and Hart testified "I seen Rayford, so he started shooting, so I broke for the back door and just while I was going in the kitchen, why, I got shot, you know, and I was—you know, trying to get the back door open, I turned around, I seen Rayford shooting Bobby, or William Medina, you know." Hart identified appellant as the man who was doing the shooting, and saw that he shot three or four times at Medina who was hit three times while he was lying down on the couch asleep. No one else who was there at the time had a gun, and no one fired a gun other than appellant. Deceased's brother, Edward Medina, observed down the stairway that appellant stepped in the door, told everyone to hold it, fired one single shot, then turned toward the divan where deceased was sleeping and fired four shots, striking him in the head, stomach, arm and the chest. Edward heard other shots later, but appellant was the only one he saw firing shots. Howard Hill also observed deceased lying on the divan asleep when appellant came in the door and started firing. He fired at deceased and struck him four times. There was one other gun there which was lying in front of deceased, a .38 calibre gun which was not loaded.

It is very clear from the evidence in this case that appellant's plea of guilty was the result of plea bargaining, which is in itself an insufficient basis to set aside a plea upon the ground that it was not voluntary. Brown v. State, 485 S.W.2d 424, 430[8] (Mo.1972); Pulliam v. State, 480 S.W.2d 896, 904[4–7] (Mo.1972), and cases cited. What appellant received in return for his guilty plea was a reduction of the charge from first degree murder to second degree murder, and the dismissal of three (or four) other felony charges. According to appellant's own testimony about conferences with his counsel, he fully understood the gravity of the charges in the cases pending and those which would be filed against him, and that "I could get a lot of time and things of that nature." There is not one iota of evidence that appellant was in any way misled into entering his plea. He acknowledged at the time of the plea that he had not been offered any reward for the plea, and he understood that he was charged with second degree murder. He realized the court would assess his punishment which could range from 10 years to life in prison.

Appellant's only serious contention is that at the time of his plea he stated to the court facts showing a defense of self defense, and that this vitiates his guilty plea by rendering it involuntary. In disposing of this contention it is necessary only to consider the evidence as to what was reasonably in appellant's mind as to the probable success of that defense in view of the strength of the state's case. It should take no large amount of acumen on appellant's part for him to realize that the state's case, as it was presented at the preliminary hearing, revealed no facts which would support self defense, if it were believed if tried to a jury. Appellant and his counsel were present at that hearing and thus knew the state's position. Those facts would support a jury's verdict of guilt of *first* degree murder as showing premeditation and deliberation to the killing. A plea of guilty is a waiver of all defenses. State

v. Conley, 123 S.W.2d 103, 105[7] (Mo. 1938); 22 C.J.S. Criminal Law § 424(6), p. 1198, and see Aills v. State, 114 Tex.Cr.R. 345, 24 S.W.2d 1097 (1930), where after a plea of guilty to murder and assessment of penalty by a jury, appellant testified to some facts which raised the issue of self-defense. The court said, loc.cit. 24 S.W.2d 1099[3–5], "The plea of guilty carries such weight touching the guilt of the accused as to foreclose that question. * * * It is only when upon such investigation the evidence developed in an affirmative way makes evident the innocence of the accused of the offense that the judgment will be overturned on appeal by reason of the quantum of proof." See also Garcia v. State, 91 Tex.Cr.R. 9, 237 S.W. 279, 281[6] (1922); Turley v. State, 439 S.W. 2d 521 (Mo.1969). Here the further facts are that appellant acknowledged his guilt at the time of the plea; he indicated agreement with the official information concerning the offense as shown by the pre-sentence investigation report; at sentencing he told the court that he had committed a very serious crime in taking the man's life; and he told the court that there was no reason why sentence should not be imposed. Appropriate to the determination of the voluntariness of appellant's plea of guilty is the quote from United States v. Colson, 230 F.Supp. 953, 955[1, 2] (D.C.S.D.N.Y.1964) contained in Collins v. State, 450 S.W.2d 186, 190[2] (Mo. 1970): " 'The determination of the ultimate question of whether the defendant, at the time he pled guilty, had the free will essential to a reasoned choice, rests upon probabilities and, of course, cannot be resolved with mathematical certainty. It involves an evaluation of psychological and other factors that may reasonably be calculated to influence the human mind. The issue of defendant's state of mind "is to be decided by the trier of the fact, * * * just as any other fact issue—the reasonable inferences to be drawn from all the surrounding facts and circumstances." Accordingly, it is necessary to consider the plea of guilty against the totality of events

and circumstances which preceded its entry.'" While it would perhaps have been better for the court to have inquired whether the statement made by appellant just prior to his plea being received affected his willingness to enter the plea, under the totality of the circumstances which shed light upon appellant's state of mind at the time of the plea, it cannot be said that the trial court's findings on the issue are clearly erroneous. Crosswhite v. State, 426 S.W.2d 67 (Mo.1968). Davis v. State, 499 S.W.2d 445 (Banc Mo.1973) is to be distinguished because there, as revealed by a presentence investigation report, appellant's lack of knowledge that a car was stolen bore upon his intention to commit the offense of driving it without the owner's permission, a clear misapprehension.

■ Appellant in his motion makes five other contentions which are each submitted with the statement that no decision had been found to support them. The first is that the information is defective in that it "does not even suggest or imply that the infliction of the mortal wound was done with any of the constituent elements of second degree murder." The information, as recited in appellant's motion, is that he did "unlawfully, wilfully, feloniously, premeditatedly and deliberately and of malice aforethought, make an assault in and upon one William R. Mediana, with a dangerous and deadly weapon, to wit: revolver, loaded with gunpowder and leaden balls, then and there inflicting * * * a mortal wound." The information fairly follows the words of the statute, § 559.010 RSMo 1969, V.A.M.S., and informed appellant of the offense charged. See the discussion of the words of the statute in State v. Marston, 479 S.W.2d 481 (Mo.1972). The point is without merit.

■ It is true that appellant testified that his counsel told him that he would get no more than 10 years imprisonment upon his plea of guilty. Upon the plea, appellant acknowledged that no one had offered him a reward for the plea, that he understood that the court would set the sentence which could be from 10 years to life imprisonment. Under the facts appearing at the time of the plea, the court's finding that it was not induced by promises is not clearly erroneous. The second point is overruled.

■ In the third point appellant asserts that he was denied effective assistance of counsel and therefore his plea was not voluntarily made. He produced no evidence that counsel was not effective. It does appear that counsel did advise appellant of the charge, the plea bargaining, and discussed the cases with him. Counsel did participate on appellant's behalf at the preliminary hearing. The denial of this ground for relief by the trial court is not, on the record, clearly erroneous.

■ There was no evidence presented that certain drugs prescribed by physicians for his injuries had any effect upon appellant's mental capacity to plead guilty. The fourth point is overruled.

■ The fifth point contention is that the pre-sentence investigation was invalid because it was conducted by a friend of the family of deceased. Parole Officer Brown testified in effect that he had no personal relationship which would in any way impair his ability to be objective in the matter. No other evidence was presented by appellant which would tend to show bias of the officer, and point five is overruled.

The judgment is affirmed.

All concur.