Arthur Lee RICE, Appellant,

v.

STATE of Missouri, Respondent.

No. 61167.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1979.

Raymond Howard, Jr., Justin J. Meehan, Howard, Singer & Meehan, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant filed a Rule 27.26 motion to set aside and vacate a judgment and sentence imposed for second degree murder based on a plea of guilty. The trial court denied the motion without evidentiary hearing on the ground that it did not present an issue of fact or question of law. Movant appealed to the Missouri Court of Appeals, Eastern District, which affirmed. Upon application of appellant, we ordered the case transferred to this court. The case will be determined in this court the same as on original appeal. Rule 83.09; Mo.Const. art. 5, § 10. We affirm.

On February 8, 1975, a 16 year old male named Kevin Gary was found by St. Louis police lying on a city sidewalk. He was pronounced dead of gunshot wounds on arrival at St. Louis City Hospital. An indictment was filed in connection with Gary's death charging appellant Arthur Rice in one count with first degree murder and in a second count with first degree attempted robbery by means of a dangerous and deadly weapon. Appellant was then an 18 year old male native of St. Louis with no prior convictions.

On March 7, 1975, Robert M. Kaiser appeared as retained attorney for appellant and thereafter filed motions for discovery and inspection, separate trial, and suppression of identification testimony. On December 10, 1975, a hearing was held before the Honorable Harry M. James, Judge of Division No. 19 of the Twenty-Second Judicial Circuit. Present at the hearing were the appellant, his attorney, Robert M. Kaiser, and Assistant Circuit Attorney Henry J. Fredericks. A transcript of the hearing shows that the state elected to reduce the charge in the first count to second degree murder and to dismiss the robbery charge. In response, the attorney for appellant announced that appellant would change his plea to guilty.

The court then spoke directly with appellant. In response to the court's questions, appellant indicated that he had authorized his attorney to change his plea and that he was not then under the influence of drugs or alcohol. The court asked appellant whether he understood that he could have the charges tried by a jury, that he had a right to confront witnesses who would testify against him, and that through his attorney he could call and examine witnesses in his own behalf. The court then inquired whether appellant was asking to waive all those rights and privileges and was asking the court to accept his plea to the charge of second degree murder; whether the appellant had discussed his case with his attorney and was satisfied with the advice he had received; whether the appellant knew that if a jury had found him guilty of second degree murder that they could sentence him to any period of years—a hundred years—in the penitentiary; whether appellant understood that a plea of guilty is the same as though a jury had found him guilty; whether appellant had been told that if the court accepted the plea of guilty and the recommendations of the prosecution, that

the appellant would be sentenced to twenty years in the Missouri Department of Corrections. To all of these questions the appellant responded, "Yes, sir."

The court asked the Assistant Circuit Attorney to state what he expected the state's evidence would show. The prosecutor outlined the following account. The victim of the fatal shooting, Kevin Gary, had been walking with Maurice Gilmore when they met a third person, Keith Johnson. While the three were talking on the sidewalk, four men ran toward them and one demanded the victim's coat. When the victim resisted, one of the four men grasped the coat and attempted to take it. Another of the four urged the man who grasped the coat to shoot the victim. One of the four did fire a shot, mortally wounding Gary. Subsequently, Maurice Gilmore picked appellant's photograph from several which the police showed him, and identified appellant as one of the group of four who had attempted to take the victim's coat, and as one who had held a pistol. On February 11, 1975, three days after the shooting, Gilmore viewed the appellant in a police line-up and again iden-tified appellant as being one of the four, and as having a pistol in his hand. The appellant told the police that he had been in the home of William and Lillian Checks at the time of the shooting, but the Checks contradicted this alibi. Appellant also told the police that he had told Thelma Wallace to summon help, but Wallace would not corroborate this claim.

After this recitation of the state's case, the court asked the appellant whether the prosecutor's account was substantially correct. Appellant admitted that it was, with the sole reservation that he had asked a nearby resident to call for help. The court then asked whether appellant, together with others, attempted to steal a coat from a man and when he resisted, appellant shot him. Appellant admitted these allegations and gave a description of the shooting incident in his own terms that was consistent with the prosecutor's description. The court accepted the plea upon the express finding that it was voluntarily made, and sentenced appellant to twenty years in the Missouri Department of Corrections.[1]

---

1. After the prosecutor outlined the state's case, the following colloquy between the court and the appellant took place:

THE COURT: Did you hear what the Assistant Circuit Attorney has said?

MR. RICE: Yes, sir.

Q. Is what he said substantially correct?

A. All except that when I knocked on the door and asked them to call the ambulance which I did.

Q. Well, you heard him recite the fact that you together with others attempted to steal a leather coat off of a man and when he resisted he was shot; did that take place?

A. Yes, sir but the man had a gun. The man, he had a gun; that's why it happened.

Q. Are you telling me that you were going to steal this coat and this man resisted your taking the coat and he had a gun?

A. Yes, sir, but I didn't know where the coat thing—See, Johnny Redd he went over there first and we was all standing on the other side of the street and Johnny Redd went over there and did something to him and said something to him, I don't know what it was and then I guess the dude, he you know—renigged and Johnny Redd called us all over and we ran over there and the dude you know—he had a gun and Johnny Redd you know—he tried to grab him again and he told me "he's got a gun" so I came up with mine.

. . . . .

Q. Did you fire your gun?

A. Yes, sir, and Gary fired his too.

Q. All right. Did you shoot him?

A. Yes, sir.

Q. You fired your gun at this man; is that right?

A. Yes, sir.

Q. And you are telling me that here in open court?

A. Yes, sir.

Q. Now this man died; didn't he?

A. Yes.

. . . . .

Q. And you are asking me to accept your plea of guilty?

A. Yes, sir.

Q. With the full understanding and knowledge that if I accept it I am going to sentence you to twenty years in the Missouri Department of Corrections?

A. Yes, sir.

THE COURT: All right. Let the record show that I accept this defendant's plea of guilty because he told me he is guilty and I find that it was voluntarily made in open court and on his plea of guilty, Arthur Rice, you are sentenced to 20 years in the Missouri

Appellant presents three general grounds in support of his motion to vacate the conviction: "(a) Petitioner did not make a knowing and voluntary plea of guilty in that he was coerced, misled, and intimidated; (b) Petitioner did not knowlingly [sic] and voluntarily waive his right to a jury trial in that he was coerced, misled and intimidated; (c) Petitioner did not have effective assistance of counsel by Robert M. Kaiser." Appellant catalogues nine "factual grounds" in support of his motion. Five of these allegations concern conduct of his retained attorney, i. e., that the attorney refused to make an investigation of appellant's case because appellant could not afford to pay private investigators $1500 in fees; that his attorney never explained to him the range of punishment possible with second degree murder and that the attorney "intimidated, misled, and coerced" the appellant to plead guilty by telling him that the family of the victim "had hired the best prosecutor in Missouri," that appellant would have no witnesses for his defense but that sixteen to forty witnesses would testify against him, and that the trial court would not permit appellant to submit to a lie detector test to establish his innocence. The other four allegations concern the conduct of the trial court in the appellant's guilty plea hearing, i. e., that the trial court failed to inquire into assertions made by the appellant to the effect that the shooting victim had a gun "which established self defense to the murder charge; that the court "coerced, intimidated and misled" the appellant to plead guilty by stating that upon a jury finding of guilt he "would be sentenced to '100 years' in the penetentiary [sic];" that the court did not make a finding that the appellant in fact knew the possible range of sentence in a conviction for second degree murder; and that the court did not make a finding that the appellant voluntar-

ily waived jury trial and voluntarily pleaded guilty.

The sole question presented on appeal is whether the trial court erred in denying appellant's motion for postconviction relief without affording him an evidentiary hearing on the factual allegations contained in the motion. The standard for determining whether a Rule 27.26 movant is entitled to an evidentiary hearing is that stated in *Smith v. State*, 513 S.W.2d 407, 411 (Mo. banc 1974), *cert. denied* 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975): "A 27.26 movant, in order to be entitled to an evidentiary hearing, must plead *facts*, not conclusions, which, if true, would entitle him to relief and must show that such factual allegations are not refuted by facts elicited at the guilty plea hearing.[2] (Emphasis in original.) This standard has been applied consistently by Missouri appellate courts to support the denial of an evidentiary hearing on a Rule 27.26 motion for relief from a judgment of conviction of second degree murder based on a guilty plea. *James V. State*, 571 S.W.2d 127, 128 (Mo.App.1978); *Tillman v. State*, 570 S.W.2d 844, 845 (Mo. App.1978); *Breeland v. State*, 568 S.W.2d 564 (Mo.App.1978); *Giles v. State*, 562 S.W.2d 106, 110 (Mo.App.1977); *Haliburton v. State*, 546 S.W.2d 771, 773 (Mo.App.1977); *Hooper v. State*, 541 S.W.2d 773, 774 (Mo. App.1976); *Shepherd v. State*, 540 S.W.2d 619, 620 (Mo.App.1976); *Taylor v. State*, 539 S.W.2d 589, 590 (Mo.App.1976); *Winston v. State*, 533 S.W.2d 709, 714 (Mo.App.1976); *Fisk v. State*, 515 S.W.2d 865, 866 (Mo.App. 1974).

In overruling the motion to vacate, the trial court made specific findings of fact and conclusions of law as required by Rule 27.26(i), *Fields v. State*, 572 S.W.2d 477, 482 (Mo. banc 1978). The court considered each

Department of Corrections; of course, jail-time will be credited to you.

2. *Fields v. State*, 572 S.W.2d 477 (Mo. banc 1978), overruled other aspects of *Smith*, but did not alter the requirement that a 27.26 motion state facts which if true would entitle the movant to relief. *Baker v. State*, 584 S.W.2d 65, at 66 (Mo. banc June 19, 1979). In fact, *Fields*

implicitly approved the requirement that a 27.-26 motion state facts and not merely conclusions. One purpose for the adoption in *Fields* of the rule that an indigent 27.26 movant is entitled to court-appointed counsel is the avoidance of any harsh impact of the *Smith* rule on the *pro se* movant. *Id.* at 483.

of appellant's allegations separately, compared the allegations with the transcript of the guilty plea hearing, and found that each failed at least one of the three requirements for entitlement to an evidentiary hearing. Our review is confined "to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." Rule 27.26(j); *O'Neil v. State*, 502 S.W.2d 342, 343 (Mo.1973); *McClure v. State*, 470 S.W.2d 548, 551 (Mo.1971); *Crosswhite v. State*, 426 S.W.2d 67, 70 (Mo.1968).

■■■■ The trial court found that appellant's allegation that his attorney refused to adequately investigate "facts and witnesses" merely stated conclusions, and so did not warrant extension of an evidentiary hearing. Where a plea of guilty has been entered, the adequacy of representation is immaterial unless counsel was so incompetent that the plea was not entered voluntarily and with understanding of the nature of the charge. *Matthews v. State*, 501 S.W.2d 44, 47 (Mo.1973); *Barylski v. State*, 473 S.W.2d 399, 402 (Mo.1971). The claim that an attorney's investigation of a case is inadequate must allege what specific information the attorney failed to discover, that reasonable investigation would have disclosed that information, and that the information would have aided or improved appellant's position. *Smith*, 513 S.W.2d at 411; *Curry v. State*, 504 S.W.2d 97, 99 (Mo.1974). Appellant's motion does not identify any particular item of information or name any particular witness that the attorney failed to seek out, and does not allege that had such information been available appellant would not have entered a guilty plea. Failure to make such specific allegations renders a 27.26 motion vulnerable to denial without an evidentiary hearing under the *Smith* standard because the motion fails to allege facts which entitle movant to relief. We find that the trial court's overruling of the motion without an evidentiary hearing on this allegation was not clearly erroneous.

■■■■ Appellant alleges that his attorney never explained the range of punishment with second degree murder and that his attorney allowed the court in the plea hearing to coerce his guilty plea by threatening a hundred year sentence if a jury were to assess punishment. An attorney has an obligation to inform his client of the possible range of punishment of the offense to which he pleads. *Smith*, 513 S.W.2d at 411; *Clemmons v. State*, 573 S.W.2d 419, 420 (Mo.App.1978); *Barber v. State*, 564 S.W.2d 914, 916 (Mo.App.1978); *Stewart v. State*, 542 S.W.2d 544, 545 (Mo.App.1976). However, the transcript of the guilty plea hearing in this case shows that the trial court explained the maximum range of punishment for second degree murder to the appellant before accepting his guilty plea. The court advised appellant that a jury "can sentence you to the penitentiary for any number of years . . . a hundred years." This explanation did not exaggerate the maximum punishment. The explanation did not state the minimum punishment, which would be not less than ten years in prison. § 559.030 RSMo 1969 (repealed Laws of Mo.1975, p. 408); § 565.008.2 RSMo 1978. The failure of the court to accurately apprise the appellant of the minimum punishment does not render appellant's plea involuntary. Regardless of whether appellant's attorney informed him of the minimum punishment, the transcript of the plea hearing shows that the appellant adequately understood the consequences of his guilty plea from the court's explanation and that he had agreed to a punishment substantially exceeding the possible minimum sentence of ten years.

■■■■ Appellant alleges that the trial court in the guilty plea hearing did not inquire into a possible claim of self-defense suggested in statements made by the appellant. (*See* note 1, *supra*). The court's failure to explore defenses that might be available to the appellant, without more, does not entitle him to relief. In denying appellant's 27.26 motion, the trial court stated that none of the essentials of self-defense are shown in appellant's motion or in the transcript of the guilty plea hearing, citing *State v. Ruffin*, 535 S.W.2d 135, 137–38 (Mo.App.1976), and indicated that the alle-

gations in the motion therefore pleaded conclusions rather than facts. Even if all the elements of self-defense were present in appellant's account of the shooting incident, a voluntary and intelligent waiver of such defenses can be effective. "A plea of guilty is a waiver of all defenses." *Rayford v. State*, 504 S.W.2d 285, 289 (Mo.App.1973). *Accord, Lipscomb v. United States*, 273 F.2d 860, 865 (8th Cir. 1960); *State v. Conley*, 123 S.W.2d 103, 105 (Mo.1938); *Bounds v. State*, 556 S.W.2d 497, 498 (Mo.App.1977); *Lewis v. State*, 539 S.W.2d 578, 579 (Mo. App.1976); Although Rule 25.04 prohibits a trial court from accepting an equivocal guilty plea, *Doepke v. State*, 465 S.W.2d 507, 512 (Mo.1971), a defendant's mere statement of facts that might support a defense of justification does not render his guilty plea so equivocal that it must be rejected. *Lewis v. State*, 539 S.W.2d 578, 579 (Mo.App.1976); *Rayford v. State*, 504 S.W.2d 285, 289 (Mo.App.1973).[3] Even protestations of innocence made contemporaneously with a plea of guilty will not vitiate a voluntary and intelligent waiver of defenses. *North Carolina v. Alford*, 400 U.S. 25, 33, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Bounds v. State*, 556 S.W.2d 497, 498 (Mo. App.1977).[4] Appellant waived his right to litigate the issue of self-defense when he entered his guilty plea. In accepting a criminal defendant's guilty plea, the court has no duty to inquire into defenses which the defendant has elected not to assert at trial.

■ The trial court also found that appellant's claim that his attorney coerced his plea by telling him the number of available witnesses involved merely a matter of trial strategy and tactics and would not entitle appellant to relief; that the allegation concerning his attorney's representation that a polygraph test would not be ruled admissible involved a correct statement of the law and would not entitle appellant to relief; and that the allegations relating to the court's questioning of appellant at the guilty plea hearing were refuted by the transcript of that hearing. We find that the trial court's determination of these issues was not clearly erroneous.

■ Appellant contends that the need "to consider the plea against the totality of events and circumstances that preceded its entry," *Lewis*, 539 S.W.2d at 579 and *Rayford*, 504 S.W.2d at 289, requires an evidentiary hearing to determine whether the plea was voluntarily entered. This is not the law. The *Smith* standard for extending an evidentiary hearing is not altered when the 27.26 movant alleges that his plea was rendered involuntary by a claim of self-defense. The fact that *Rayford* and *Lewis* extended an evidentiary hearing merely reflects the fact that the trial court in those cases found that the motion met the *Smith* requirements. In the instant case, the trial court found movant's allegations were refuted by the transcript of the guilty plea hearing. We find no error which would warrant reversal. Judgment affirmed.

BARDGETT, C. J., DONNELLY, RENDLEN and MORGAN, JJ., and WELBORN, Special Judge, concur.

SEILER, J., concurs in result.

---

3. *State v. Meaney*, 563 S.W.2d 117 (Mo.App. 1978) is not inconsistent with our holding. In *Meaney*, the trial court refused to accept a plea of guilty to a charge of manslaughter after the defendant stated that he had shot the victim only in self-defense. The defendant appealed in a subsequent conviction of second degree murder, alleging error in the trial court's rejection of his plea of guilty to the reduced charge. The court held that a criminal defendant has no constitutional right to have his guilty plea accepted, but did not hold that a trial court must reject as equivocal a guilty plea tendered simultaneously with an assertion that the defendant acted in self-defense.

4. This rule is based on the view that a defendant who believes he is innocent should not be forced to assert a potentially disastrous defense, but should be permitted to judge for himself whether a jury would be convinced of his innocence. *Alford*, 400 U.S. at 33, 91 S.Ct. 160. "Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term." *Id.* at 37, 91 S.Ct. at 167.

HIGGINS, not participating because not a member of the court when cause was submitted.