**Russell D. FAUST, Petitioner,**

v.

**Jimmie JONES, Respondent.**

**No. 87–0376–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

June 18, 1987.

William L. Webster, Atty. Gen. State of Mo., Jefferson City, Mo., for defendant.

Russell D. Faust, pro se.

## MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS

JOHN W. OLIVER, Senior District Judge.

### I.

This State prisoner habeas corpus case presents two questions: (1) whether some provision in the Constitution of the United States requires a State trial court to accept a plea bargain based on an "Alford" plea, see *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and (2) whether petitioner's trial counsel's assistance was ineffective under the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The Attorney General concedes in his response to this Court's order to show cause that "petitioner has exhausted available state remedies for his present claims." Response at 3. We have reviewed and considered petitioner's petition for federal habeas corpus, the transcripts of the record made on petitioner's direct appeal, the transcript of the evidentiary hearing accorded petitioner pursuant to Missouri Rule 27.26, the decisions made by the Missouri trial and appellate courts, and the briefs filed by the parties in both those State court proceedings. We find and conclude that the petitioner's petition for habeas corpus should be denied on the merits for the reasons stated in part III of this memorandum opinion.

It is necessary, however, that we first discuss the Attorney General's untenable argument that the petitioner suffered an "independent state procedural" default that precludes this Court from reaching the merits of petitioner's claims.

### II.

#### A.

The Attorney General properly conceded that the petitioner exhausted both claims alleged in his federal habeas corpus petition. The records before the Court establish that petitioner's refused "Alford" plea claim was exhausted on direct appeal and that his ineffective assistance of trial counsel claim was exhausted by his appeal of the State trial court's denial of Rule 27.26 relief.

The Attorney General's response nevertheless argued that both "of petitioner's claims are subject to adequate and independent state procedural grounds precluding review." Response at 4. That argument was based on the fact that petitioner, after the Missouri Court of Appeals had affirmed his conviction on direct appeal, failed to file a Missouri Rule 83.03 motion to transfer to the Supreme Court of Missouri; similarly, after the Missouri Court of Appeals had affirmed the denial of Rule 27.26 relief, petitioner failed to file an application to transfer that appeal to the Supreme Court of Missouri pursuant to Missouri Rule 84.08.

Based on the unwarranted assumption that a petitioner's failure to file a motion to transfer an unsuccessful appeal from a Missouri Court of Appeals to the Supreme

Court of Missouri is, in fact, a "procedural default," the Attorney General devotes several pages of his response to a discussion of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and a number of cases decided by the Seventh and Ninth Circuits. Indeed, it is argued that the "position" maintained by the Attorney General "has recently been adopted by the Eighth Circuit" (Response at 5) by its decision in *Poor Thunder v. United States*, 810 F.2d 817 (8th Cir.1987).[1]

In *Fisher v. Trickey*, 656 F.Supp. 797 (W.D.Mo.1987), the Attorney General argued that a State prisoner's failure to file a motion to transfer from a Missouri Court of Appeals to the Supreme Court of Missouri should be considered as a failure to exhaust. We rejected the Attorney General's exhaustion argument made in that case for reasons that we stated in detail. The Attorney General's argument in this case simply changes the "failure to exhaust" label he attempted to place on a failure to file a motion to transfer argument to a "procedural default" label.

 We reject the "procedural default" argument for the same reasons that we rejected the failure to exhaust argument as those decisions were stated in *Fisher v. Trickey*.

### B.

On June 4, 1987 the petitioner, reacting to the Attorney General's response, filed a backup *pro se* "motion to dismiss without prejudice in order to correct procedural default caused by state court appointed counsel." That *pro se* motion stated that petitioner had not filed any motions to transfer to the Supreme Court of Missouri for the reason "petitioner was made to believe by his [State] court appointed appellant counsel that he had filed all the necessary motions in order to allow petitioner free and clear access to the Federal Court jurisdiction pursuant to 28 U.S.C. § 2254." Petitioner's motion at 1.

The *pro se* law clerk of this Court who assists in the processing of some of the State prisoner habeas corpus cases filed in this Court has reported receiving inquiries from State prisoners through their appointed counsel concerning whether there was any necessity to file motions to transfer before the filing of a federal habeas corpus petition.

Those inquiries were prompted by the Attorney General's presentation in a substantial number of cases of the exhaustion argument that this Court rejected in *Fisher v. Trickey*.[2] Petitioner's *pro se* motion to dismiss is but an example of the sort of confusion that produced the inquiries made of this Court's *pro se* law clerk. The Court is confident that the petitioner does not wish to be remanded back into the State court system. Petitioner's *pro se* motion to dismiss will accordingly be denied. Appropriate considerations of comity require that we refuse to impose additional and predictably futile paperwork on the appellate courts of Missouri.

We trust that the Attorney General will understand that both his exhaustion and his procedural defect arguments based on a State prisoner's failure to file motions to transfer to the Supreme Court of Missouri will be summarily rejected until and unless the Court of Appeals adopts a contrary rule.[3]

---

1. *Poor Thunder,* of course, was a federal Section 2255 case involving the procedures that must be followed by a district court under Rule 32 of the Federal Rules of Criminal Procedure, as amended in 1983.

2. Long experience in processing State prisoner habeas corpus cases establishes that every shift of position made by the Attorney General is promptly circulated among the inmates held in custody who spend a substantial amount of their time in the preparation of postconviction litigation for themselves and for their fellow inmates.

3. On page 4 of his response the Attorney General states that: "Respondent is concerned about the implications of footnote one of the recent decision by the United States Court of Appeals for the Eighth Circuit in *Wade v. Armontrout,* 798 F.2d 304, 306 n. 1 (8th Cir.1986). Respondent requests that if this Court allows petitioner to amend his petition to include new claims, respondent be allowed an opportunity to discuss the exhaustion or nonexhaustion of those claims." Petitioner has not requested leave to amend his pending petition. A great deal of the Attorney General's time, and certainly a great

## III.

### A.

The petitioner is not entitled to federal habeas corpus relief on the alleged ground that the State trial court refused to accept his "Alford" plea of guilty for the reasons stated by the Missouri Court of Appeals in its unpublished opinion affirming petitioner's conviction on direct appeal. *See* Exhibit E.

The factual circumstances are not in dispute. The Missouri Court of Appeals reliably found that "[b]efore trial defendant had attempted to plead guilty to both counts in exchange for the prosecution's agreement to recommend twenty years on each count, such sentences to run concurrently" but that at "the very outset of the hearing on the plea, the judge expressed reservations in accepting the plea when told by the defense counsel that defendant 'was extremely intoxicated the night of the offense, that he has no independent memory of when he committed the offense.'" Exhibit E at 2.

The Missouri Court of Appeals then accurately summarized the careful inquiry conducted by the State trial court on petitioner's tendered plea of guilty as reflected by pages 1 to 16 of the trial transcript (Exhibit A). That portion of the transcript shows the reasons why the State trial court concluded that it would not accept petitioner's "Alford plea" of guilty. Tr. 14.

Petitioner argued in his brief on direct appeal that *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), acknowledged "the existence of a limited right to plead guilty under circumstances closely resembling the present case." Exhibit C at 12. The Missouri Court of Appeals, however, properly concluded that both *North Carolina v. Alford* and *State v. Meaney,* 563 S.W.2d 117 (Mo.App.1978), recognize that a defendant does not have an "absolute, constitutional right to plead guilty." Exhibit E at 3.

The Missouri Court of Appeals further stated the following in regard to Missouri law: "While a trial judge may accept a guilty plea when the accused does not categorically confess his guilt, *Rice v. State,* 585 S.W.2d 488 (Mo.1979) (en banc), he is not required to do so. *State v. Meaney, supra.*"[4] Exhibit E at 5.

■ We find and conclude that the Missouri Court of Appeals properly concluded that petitioner did not have a federal constitutional right to have his plea of guilty accepted and that petitioner's assertion of that claim as a ground for federal habeas corpus relief is untenable.

### B.

Petitioner's ineffective assistance claim in this Court is based on petitioner's allegation that "[p]etitioner's trial counsel failed to make an indepth investigation into the charges against petitioner before proceeding to trial and prior to trial defense Counsel failed to interview all the witnesses supplied to him by petitioner prior to trial." Petition at 5.

Although the petitioner alleged other grounds of ineffective assistance in his *pro se* Rule 27.26 motion, the amended Rule 27.26 motion filed by his appointed counsel focused on petitioner's trial counsel's alleged failure to locate "one Billy Smith who purportedly spent the entire evening in question with the movant, [but who] could not be located" (Respondent's Exh. F at 17)

---

deal of judicial time, would be conserved if the Attorney General would be concerned about briefing the merits of State prisoner habeas corpus cases rather than about the possibility of waiving some sort of an exhaustion question that, in most cases, simply delays the final determination of the merits of such a case.

**4.** In *State v. Meaney,* 563 S.W.2d at 118, the Missouri Court of Appeals accurately stated that "[t]here is no absolute or constitutional right to have a guilty plea accepted," citing *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498,

30 L.Ed.2d 427 (1971), and that "*Alford* did not hold the accused had a constitutional right to have a guilty plea accepted but in fact stated to the contrary in footnote 11." *Id. Alford's* footnote 11, 400 U.S. at 38, 91 S.Ct. at 167, stated that "[o]ur holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court...."

and on trial counsel's alleged failure "to interview (and subpoena) certain witnesses, including Manuel Davis and Charles McCray, who would or could have testified that from five to fifteen minutes prior to the occurrence of the crime in question, the movant was quite intoxicated, was at a location two and one-half miles from the scene of the crime, and was on foot." *Id.* at 17–18. Petitioner's amended Rule 27.26 motion further alleged that "counsel's failure in this regard resulted in prejudice to his defense for the reason that the testimony of Davis and McCray in conjunction with testimony regarding distances between his location at a certain time and the scene of the crime would have, in effect, established an alibi for the movant." *Id.* at 18.

■ The Rule 27.26 hearing was also focused on the points we have quoted from petitioner's amended Rule 27.26 motion.[5] Manuel Davis and Charles McCray testified on petitioner's behalf at the Rule 27.26 hearing. Billy Smith was never located and did not testify at that hearing.[6]

Examination of the transcript of the Rule 27.26 hearing (Exhibit G), establishes that the Missouri Court of Appeals reliably found that:

> Manuel Davis and Charles McCray testified for Faust at the evidentiary hearing. Both stated that Faust was a regular customer of the Club 77 South Lounge and that he habitually stayed until closing time. McCray could not recall, at the time of the evidentiary hearing, whether Faust was at the bar on the night of the offense, but Davis testified that Faust was there and that he left alone and intoxicated at approximately 1:15 a.m. Davis thought Faust left on foot but he could not say with certainty that Faust did not have a car.[7]

Exhibit J at 2–3.

The Missouri Court of Appeals' opinion establishes that the applicable federal constitutional standard was recognized and applied by that court. For that opinion stated that in "determining whether Faust was entitled to prevail on his motion for postconviction relief, the court applies the standard, set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Love v. State,* 670 S.W.2d 499, 501 (Mo. banc 1984), which requires that a movant show both that his attorney failed to exercise the customary skill and diligence a reasonably competent attorney acting under similar circumstances would exercise, and that the deficient performance was prejudicial to the defense." Exhibit J at 3. That court concluded that the petitioner failed to carry the burden of establishing prejudice for the reason that the testimony of petitioner's two Rule 27.26

---

5. The State trial court accurately noted that petitioner's *pro se* Rule 27.26 motion which was incorporated by reference in petitioner's amended motion, raised questions concerning "defense counsel's unfamiliarity with witnesses, defense counsels' unfamiliarity with voluminous documentary evidence, defense counsels' failure to interview State's witnesses and defense counsels' failure to consult extensively with defendant" but that petitioner "presented no evidence on these points." *Id.* at 38. Under those circumstances, those abandoned postconviction claims may not properly be considered by this Court.

6. Nickie Warren Burke testified as a defense witness at petitioner's trial that he, the petitioner, and Billy Smith spent three or four hours drinking together at the Club 77 South Lounge on August 17, 1982 and that the petitioner was intoxicated by the time Burke left the bar around 7:00 or 8:00 p.m. that day. Exhibit A at 139, 141. Burke further testified that both the petitioner and Billy Smith were employed by him (*id.* at 137) but when he was asked, "Do you know where he [Billy Smith] is today?", he answered, "Somewhere down around Austin, Texas." *Id.* at 144. When Burke was asked, "Do you know how to get ahold of him if you have to?", he answered "No, I don't." *Id.*

7. The factual findings made by the State trial court were not as precise as those made by the Missouri Court of Appeals because it applied Missouri's "trial strategy" rule rather than the controlling federal standard; it stated that the "decision by trial counsel to call witnesses is a matter of trial strategy." Exhibit F at 39. Nevertheless, the State trial court did reliably find that: "Manuel Davis' testimony at the hearing could not place him at the Club 77 South Bar during the occurrence of the crime" and that Charles McCray's testimony concerning "the number of Club 77 T-shirts available and the number of patrons with bald heads ... would have been of little assistance to establish defendant's innocence." *Id.*

witnesses failed to "account for Faust's activities at the time of the crime" for the reason that:

> At best, the evidence showed only that Faust left the bar some fifteen minutes before the crime occurred. Where the scene of the crime was only two miles away from the bar, such testimony would not rule out the possibility that Faust committed the crime.

*Id.* at 4.

*Strickland* teaches that a convicted defendant's ineffective assistance claim has two components: "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. at 2064. *Strickland* also teaches that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one" (*id.* at 697, 104 S.Ct. at 2069) and that a "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. at 2071.

While we are satisfied that the State courts could have reliably found that the petitioner failed to show that counsel's performance was deficient under the particular circumstances of this case, it was not necessary for those courts to do so. Nor is it necessary for this Court to make such a finding. For we are satisfied that the State court reliably found that the petitioner failed to establish the second component of showing that counsel's performance prejudiced the defense.[8]

For the reasons stated, it is

ORDERED (1) that petitioner's petition for habeas corpus should be and the same is hereby denied. It is further

ORDERED (2) that the Clerk, in accordance with Rule 58 of the Federal Rules of Civil Procedure, prepare and enter a final judgment on a separate document that re-

flects the denial of petitioner's petition for habeas corpus as stated in Order (1) above.

---

**8.** The State court's consideration of the second component of prejudice was in full accordance with *Strickland*'s suggestion that if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.