

# In the
# Missouri Court of Appeals
# Western District

LAKEITH R. COURTNEY,

        Appellant,

                                       **WD85114**
                                 **OPINION FILED:**
v.                              **March 21, 2023**

STATE OF MISSOURI,

        Respondent.

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Bryan Round, Judge

Before Division Three: Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, Judge,
Cynthia L. Martin, Judge

Lakeith R. Courtney ("Courtney") appeals from the motion court's denial of his Rule

24.035[1] motion for post-conviction relief following an evidentiary hearing. Courtney

asserts that the motion court committed clear error in denying his motion for post-

conviction relief because in refusing to consider evidence related to self-defense during the

---

[1]All rule references are to Missouri Supreme Court Rules (2020), unless otherwise
indicated.

sentencing hearing, the sentencing court denied Courtney due process and meaningful allocution. Courtney claims that, had the sentencing court allowed him to present evidence related to self-defense, there is a reasonable probability that Courtney would have received a sentence less than the maximum allowed under the plea agreement. Finding no error, we affirm.

## Factual and Procedural History

The State initially charged Courtney with one count of murder in the first degree and one count of armed criminal action in connection with the November 2015 killing of Kevin Durham ("Durham"). In June 2019, the State and Courtney entered a plea agreement that provided that Courtney would plead guilty to murder in the second degree and armed criminal action in exchange for a maximum punishment of twenty-four years' imprisonment. On June 7, 2019, Courtney pleaded guilty to murder in the second degree and armed criminal action. Courtney testified at the plea hearing that, on November 7, 2015, he drove his girlfriend's minivan to Fast Stop, located at 41st Street and Prospect Avenue in Kansas City, to buy sodas. When Courtney left the store, he walked up to a vehicle occupied by Durham and shot Durham with a semiautomatic pistol. The sentencing court accepted Courtney's guilty pleas and ordered a sentencing assessment report.

The sentencing court held a sentencing hearing on September 12, 2019. Before the hearing began, the sentencing court asked the parties whether they had any clarifications to the sentencing assessment report. Both the State and Courtney's attorney responded that they did not. The sentencing court then indicated that it had a concern based on its review of the sentencing assessment report:

2

I'm looking at page 3 of the report, dated July 12th at the bottom. It reflects the statement that Mr. Courtney alleges he was "scared for his life." If that's the case, and there is some aspect of self-defense that he intended to raise, is he asking the Court to withdraw his plea of guilty?

Courtney's attorney indicated that Courtney did not intend to withdraw his pleas and that instead Courtney would like to "very briefly" address self-defense during allocution to explain the actions he undertook. The sentencing court then stated:

Well, I'm going to allow him to say whatever he wants to say, but I want you to know that I'm no[t] going to consider self-defense because that is an issue that was waived during the course of his plea and he has acknowledged that it wasn't a self-defense case or he wouldn't have pled guilty. And if he believes that it is a self-defense case and he wants to withdraw his plea, then that's what he should do. Or at least that's what he should request to do.

Courtney's attorney responded that Courtney did not want to raise self-defense as a defense to criminal liability because "he acknowledges that it was a mistake on his part to have used force" under the circumstances so that a self-defense claim is not at issue. The sentencing court then said, "I don't expect to hear anything about that . . . [b]eyond what Mr. Courtney wants to say. But he should be aware that, based on what he's told me, I don't find it to be a self-defense case." Courtney's attorney responded, "And we acknowledge that and that's been explained at length between attorney and client."

Both the State and Courtney then presented evidence to the sentencing court. Courtney's grandmother, uncle, aunt, sister, and mother testified that Courtney was not violent, instead characterizing him as a "peacemaker." Courtney's uncle further testified:

This was between two men who had a misunderstanding and no one knew about it, but them. And I feel like my nephew truly made the wrong choice, but at that time, he felt like he made the only choice. . . . Yes, he's done a terrible thing, another man lost his life, but it still gets back to the question of why and how this happened. And you know, I don't want to point fingers

3

at the victim, but he's not victimless. You know, my nephew, he's a victim of his actions and he's here trying to pay for his actions. But in exchange for trying to pay for his actions, things should be taken into consideration, the circumstances and everything, the history of violence between these two individuals. . . . This was a misunderstanding between these two men and that should not get lost.

Courtney's aunt testified similarly:

My nephew never did nothing to hurt or kill nobody up until this point and he feared for his life. He feared for his life. Because he wouldn't have never- he kept trying to detour it and not be in no mix with nobody, and I know that for a fact.

After the sentencing court asked whether Courtney would like to speak, Courtney made the following statement: "I apologize for putting you all through all the pain and suffering I did. I panicked. I made a mistake. I should have just walked away. It just happened too fast. I apologize." Before announcing Courtney's sentence, the sentencing court stated: "Durham, he sat in his car. And I'm not really interested in talking about self-defense. . . . I don't think that it's a self-defense case. It's a bad, bad, terrible decision case, and maybe Mr. Courtney would like to take that back. But you can't." The sentencing court sentenced Courtney to 24 years' incarceration for murder in the second degree and three years' incarceration for armed criminal action, and ordered the sentences to run concurrently.

Following Courtney's timely *pro se* Rule 24.035 motion and appointment of counsel by the sentencing court, appointed counsel filed a timely amended Rule 24.035 motion ("Amended Motion"). The Amended Motion asserted three bases for post-conviction relief: (1) the sentencing court violated Courtney's due process right to present mitigation evidence during the sentencing hearing, particularly evidence of self-defense, based on the sentencing court's erroneous view of the law; (2) Courtney's sentencing counsel provided

4

ineffective assistance of counsel in failing to make an offer of proof in response to the sentencing court's refusal to hear self-defense evidence at sentencing; and (3) in the alternative, the sentencing court violated Courtney's due process right to meaningful allocution by forbidding Courtney to present mitigation evidence.

The motion court[2] held an evidentiary hearing on October 8, 2021, during which Courtney and his sentencing counsel testified. Courtney's sentencing counsel testified that he did not believe that the sentencing court restricted his line of questioning for sentencing or allocution because self-defense was not a valid claim in this case and was not part of his strategy. Courtney's sentencing counsel explained:

> Based on the evidence that I saw in his acknowledgment of guilt and acceptance of responsibility, self-defense was not a fact that I believed to be material in a genuine way. . . . I think acceptance of responsibility was more important for that day. My client acknowledged making a mistake and that's where we honed in. . . . [Because of the crime being captured on video,] [i]t would be . . . disingenuous . . . under that circumstance, which looked pretty much like an execution-style [to] try to say, "Well, I was afraid of this guy because of something that happened in the past." I think that turns and suddenly you're faced with a lack of acceptance or responsibility.

Courtney testified that, while he always wanted to take responsibility for his actions and did not want to withdraw his guilty plea, he also wanted to talk about issues related to his self-defense claim during sentencing. Courtney testified that he particularly wanted the sentencing court to hear about Durham's reputation for violence in the community given his nickname "Killer Kev"; about Durham previously robbing Courtney at gunpoint; and

---

[2]The same judge presided over sentencing as presided over the evidentiary hearing on the Amended Motion.

5

about Courtney's belief that Durham was reaching for a weapon directly before he shot Durham.

Courtney's post-conviction counsel argued to the motion court that Courtney wished to present evidence related to self-defense during sentencing and allocution so that the sentencing court could determine whether Courtney was a "cold blooded killer [or] someone who mistakenly believed" that Durham--based on his reputation, his history of violence, and his actions in the car--was about to shoot Courtney at the time Courtney shot Durham. Courtney's post-conviction counsel emphasized that Courtney did not want to assert self-defense as justification for his actions; instead, Courtney simply wanted to provide the sentencing court context for his decision to shoot Durham. The motion court responded:

> Well, if these weren't self-defense facts, then I didn't make any statement about not being able to raise them. I only suggested that, based on what I read that Mr. Courtney said in the [sentencing assessment report], that he was asserting a self-defense claim and I was concerned that if that were the case, that he should be given that opportunity to at least ask the Court to set aside his guilty plea and proceed to trial.
>
> So, if we're talking about self-defense, and using those terms, nothing that I said or did prohibited him from raising any of the facts that he is talking about today.

The motion court issued its findings of fact, conclusions of law, and judgment ("Judgment") on December 17, 2021. The Judgment denied the Amended Motion. With respect to Courtney's three post-conviction claims for relief, the motion court concluded: (1) the sentencing court correctly concluded that, by pleading guilty, Courtney waived any self-defense claim, and Courtney failed to demonstrate that he was prejudiced by the

6

sentencing court's ruling at sentencing; (2) Courtney failed to demonstrate his sentencing counsel's strategy was unreasonable and that, had his sentencing counsel objected to the sentencing court's ruling as to self-defense and made an offer of proof, the sentencing court would have changed its ruling; (3) Courtney was afforded meaningful allocution because he was allowed to present mitigation evidence and make a statement to the sentencing court prior to the pronouncement of the sentence.

Courtney appeals.

## Standard of Review

Our review of the denial of a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 24.035(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with a definite and firm impression that a mistake has been made." *Wynes v. State*, 628 S.W.3d 786, 794 (Mo. App. W.D. 2021) (quoting *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016)). We presume that the motion court's findings are correct, deferring to the motion court's superior ability to judge the credibility of witnesses at the evidentiary hearing. *Id.* Where, as here, the sentencing court and the motion court are one and the same, the motion court's findings "carry special weight." *Dawson v. State*, 611 S.W.3d 761, 767 (Mo. App. W.D. 2020).

## Analysis

Courtney presents two points on appeal. In his first point on appeal, Courtney asserts that the motion court clearly erred in denying the Amended Motion because the sentencing court violated Courtney's right to due process in refusing to consider relevant

7

mitigating evidence, namely evidence of self-defense, during sentencing. Courtney's second point on appeal argues that the motion court clearly erred in denying the Amended Motion because the sentencing court violated Courtney's right to due process in not providing meaningful allocution to Courtney in refusing to allow him to speak freely prior to the pronouncement of sentence. For each of Courtney's points on appeal, he claims that, had the sentencing court heard and considered evidence related to self-defense as context for Courtney's shooting of Durham, there is a reasonable probability that the sentencing court's sentence of Courtney would have been shorter.

Rule 29.07(b)(1) provides for allocution prior to the entry of judgment and sentence.[3] In particular, "the defendant . . . must be informed by the court of the verdict or finding and asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him." Rule 29.07(b)(1). Courtney, citing *State v. Taylor*, 466 S.W.3d 521, 534 (Mo. banc 2015), claims that the right to allocution includes a right to be given the opportunity to speak and to present mitigating evidence prior to the court's pronouncement of sentence. *Taylor*, however, cited no authority for this proposition, which itself was *dicta* because under the plain language of Rule 29.07(b)(1), allocution is directory, not mandatory, if the defendant has filed a motion for new trial. *Id.* at 533. Nonetheless, we assume, without deciding, that the right to allocution includes the right to

_____

[3]Courtney's Brief references pre-1980 caselaw that held there is no right to allocution following a guilty plea. We need not determine whether these cases continue to be valid after the 1980 revision to the Rules of Criminal Procedure because, as discussed *infra*, the sentencing court allowed Courtney to present mitigating evidence and to speak to the sentencing court prior to the pronouncement of sentence in compliance with Rule 29.07(b)(1).

8

present mitigating evidence and the right to speak to the court before the imposition of sentence for the purpose of resolving Courtney's appeal. Courtney claims that the sentencing court's ruling prevented him from presenting mitigating evidence and from speaking freely to the sentencing court about the circumstances surrounding his crimes.

At issue in both of Courtney's points relied on is the characterization of the sentencing's court's ruling that it would "allow [Courtney] to say whatever he wants to say," but that it would not "consider self-defense because that is an issue that was waived during the course of his plea." Courtney claimed in his Amended Motion and continues to claim on appeal that the effect of the sentencing court's ruling was to prevent him from presenting any mitigating evidence to explain the context of Courtney's actions, particularly his mindset at the time he shot and killed Durham. Courtney asserts that this ruling from the sentencing court was based on a misunderstanding of the law. The State disputes Courtney's characterization of the sentencing court's ruling, asserting that the trial court simply indicated that it would not entertain a claim of a self-defense because, as a matter of law, Courtney waived such a defense by pleading guilty to murder in the second degree and armed criminal action. The State asserts that the sentencing court's ruling had no effect on Courtney's ability to present mitigating evidence at sentencing and allocution. We begin with whether the sentencing court misunderstood the law.

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *State v. Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018) (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)). The effect of pleading guilty is a relinquishment of "all

9

nonjurisdictional defects, including statutory and constitutional guarantees." *Id.* (quoting *Garris v. State*, 389 S.W.3d 648, 651 (Mo. banc 2012)). Among those defenses waived by a guilty plea is a claim of self-defense. *Rice v. State*, 585 S.W.2d 488, 494 (Mo. banc 1979). As such, in pleading guilty to murder in the second degree and armed criminal action, Courtney "waived his right to litigate the issue of self-defense." *See id.*

The sentencing court correctly identified a guilty plea's legal effect on a claim of self-defense and gave Courtney a chance to withdraw his guilty pleas in order to assert self-defense as an absolute defense. Courtney's sentencing counsel responded that Courtney did not wish to withdraw his guilty pleas and instead wanted to present mitigating evidence, particularly through making a statement during allocution, as to his state of mind at the time he shot Durham. The sentencing court then made the ruling at the center of Courtney's points on appeal, the scope of which is debated by the parties: "I'm going to allow him to say whatever he wants, but I want you to know that I'm no[t] going to consider self-defense because that is an issue that was waived during the course of his plea . . . ." The question framed is whether this ruling excluded mitigating evidence during allocution, or merely clarified that mitigating evidence would not be considered on the issue of self-defense.

An objective review of the plain language used by the sentencing court demonstrates that there was no intent to exclude evidence or statements of any kind that Courtney wished to offer during allocution. Instead, the sentencing court simply wanted to make it clear that evidence or statements offered by Courtney during allocution would not and could not be considered on the issue of self-defense as an absolute defense. The motion court, which also served as the sentencing court, consistently noted during the evidentiary hearing on

10

Courtney's Amended Motion that "nothing that I said or did prohibited [Courtney] from raising any of the facts that he [talked] about [at the evidentiary hearing]."

This was not clear error. The record does not support a conclusion that Courtney was prohibited from presenting evidence or making statements during allocution about any topic, including Durham's reputation for violence in the community, Durham's previous armed robbery of Courtney, or Courtney's belief that Durham was reaching for a weapon directly before Courtney shot Durham. In fact, the sentencing court allowed witnesses to testify during the sentencing hearing about matters touching on self-defense. And sentencing counsel testified that he made a strategic decision to avoid presenting evidence during sentencing that could render disingenuous Courtney's efforts to demonstrate remorse and accountability.[4]

As such, the motion court did not clearly err in denying the Amended Motion's post-conviction claims alleging that Courtney was not afforded the opportunity to present mitigating evidence and to speak freely to the sentencing court before the pronouncement of sentence.

Courtney's points on appeal are denied.

---

[4]To the extent that mitigating evidence regarding the nature and circumstances of the crimes, including Courtney's state of mind, was limited, Courtney's sentencing counsel chose to do so as a matter of strategy. Courtney's sentencing counsel testified at the evidentiary hearing that he did not pursue a self-defense strategy because to do so would have been in direct opposition to Courtney's acceptance of responsibility. Courtney's Amended Motion asserted that his sentencing counsel was ineffective in failing to object and make an offer of proof in response to the sentencing court's refusal to hear self-defense evidence. The Judgment denied this post-conviction claim, and Courtney has not appealed its denial.

11

**Conclusion**

The Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

12